**IN THE U.S. DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

EDIN HUSIDIC, D/B/A AMA EXPRESS,
INC., ADIS DOGIC, SAMIR CAJIC, D/B/A
TRANSITLINE, INC., SEMIR
KUJUKOVIC, D/B/A REDLINE
TRANSPORT, LLC, ADIS ODOBASIC,
D/B/A GREEN EXPEDITE, LLC, ALIJA
MARIC, ALVIR BAJREKTAREVIC, D/B/A
ALVIR TRANSPORTATION, INC., AMIR
BAJREKTAREVIC, D/B/A LONE STAR
TRANSPORT, INC. and CORONADO
TRANSPORT, LLC, ANTON PRENKOCAJ,
D/B/A CAP TRUCKING, LLC, DALIBOR
DRAGAS, D/B/A GOLD STAR
TRANSPORT, LLC, DAMIR KESEROVIC,
DZEMAIL HASANOVIC, ELVIS
GRACANIN, D/B/A A&G LOGISTICS,
LLC, ELVIS TOPIC, HASAN DOGIC,
IRFAN BAJREKTAREVIC, KENAN
HUJDUR, LJEKA JUNCAJ, D/B/A LNI
TRUCKING, SAMIR DIZDAREVIC, D/B/A
QUICK RUN, INC., SAMIR MEHULIC and
VAHID MARIC, D/B/A GTX LOGISTICS,
LLC, on behalf of themselves and/or others
similarly situated,

      Plaintiffs,

v.

FR8 SOLUTIONS, INC., ALEN KAJDIC,
and AZRA BEGOVIC,

      Defendants.

Case No. 24 cv 4253

Jury Trial Demanded

## CLASS ACTION COMPLAINT

Plaintiffs, EDIN HUSIDIC, D/B/A AMA EXPRESS, INC., ("E. Husidic"), ADIS DOGIC

("A. Dogic"), SAMIR CAJIC ("S. Cajic"), D/B/A TRANSITLINE, INC., SEMIR KUJUKOVIC,

D/B/A REDLINE TRANSPORT, LLC ("S. Kujukovic"), ADIS ODOBASIC, D/B/A GREEN

EXPEDITE, LLC, ("A. Odobasic"), ALIJA MARIC ("A. Maric"), ALVIR BAJREKTAREVIC, D/B/A ALVIR TRANSPORTATION, INC. ("Al. Bajrektarevic"), AMIR BAJREKTAREVIC, D/B/A LONE STAR TRANSPORT, INC. and CORONADO TRANSPORT, LLC, ("Am. Bajrektarevic"), ANTON PRENKOCAJ, D/B/A CAP TRUCKING, LLC, ("A. Prenkocaj"), DALIBOR DRAGAS, D/B/A GOLD STAR TRANSPORT, LLC, ("D. Dragas"), DAMIR KESEROVIC ("D. Keserovic"), DZEMAIL HASANOVIC ("D. Hasanovic"), ELVIS GRACANIN, D/B/A A&G LOGISTICS, LLC, ("E. Gracanin"), ELVIS TOPIC ("E. Topic"), HASAN DOGIC ("H. Dogic"), IRFAN BAJREKTAREVIC ("I. Bajrekterevic"), KENAN HUJDUR ("K. Hujdur"), LJEKA JUNCAJ, D/B/A LNI TRUCKING, ("L. Juncaj"), SAMIR DIZDAREVIC, D/B/A QUICK RUN, INC., ("S. Dizdarevic"), SAMIR MEHULIC ("S. Mehulic") and VAHID MARIC, D/B/A GTX LOGISTICS, LLC, ("V. Maric"), bring this cause of action on behalf of themselves and/or others similarly situated (collectively, "Plaintiffs"), against Defendants FR8 SOLUTIONS, INC. ("FR8"), ALEN KAJDIC ("A. Kajdic") and AZRA BEGOVIC ("A. Begovic"), stating as follows:

## INTRODUCTION

1.      These claims are brought by Plaintiffs as representatives of a class of truck drivers working for FR8 allegedly as independent contractors. They seek relief in connection with a scheme devised by or otherwise participated in by Defendants, A. Kajdic and A. Begovic, to underpay Plaintiffs for loads Plaintiffs transported through interstate commerce. Defendants, A. Kajdic and A. Begovic, achieved this by personally, directing others to, or otherwise foreseeably failing to fully disclose load price amounts in transactions with third-party brokers to Plaintiffs. More specifically, Plaintiffs entered into identical or substantially similar contracts with FR8, where FR8 agreed to pay Plaintiffs 88% of the linehaul rate, i.e., the value of each load Plaintiffs

transported through interstate commerce at FR8's direction. Even though Plaintiffs transported each load for FR8, FR8 did not pay Plaintiffs the full 88% of the linehaul rate. Instead, at the direction, coordination or otherwise involvement of A. Kajdic and A. Begovic, Plaintiffs received altered statements of earnings and deductions and dispatch instructions sent via wire transmissions and/or the U.S. Mail, reflecting a load rate substantially lower than the real value. A. Kajdic has also engaged in state crimes, in addition to witness and victim tampering prohibited by federal law by, *inter alia*: threatening Plaintiffs and terminating Plaintiffs' contracts once Plaintiffs discovered Defendants' wrongdoing. The relief sought includes actual, punitive and treble damages resulting from the scheme to commit crimes directly targeting Plaintiffs, such as witness tampering, victim tampering, wire fraud and mail fraud, utilized by A. Kajdic and/or A. Begovic. Plaintiffs also seek relief against FR8 for breach of contract.

## **PARTIES**

2.      Plaintiff, E. Husidic, an Illinois resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around April 2021 to on or around July 2023. E. Husidic does business as AMA Express, Inc.

3.      Plaintiff, S. Cajic, an Illinois resident, is an interstate truck driver, who worked for FR8 as what FR8 classified as an independent contractor, from on or around January 2021 to on or around July 2023. S. Cajic does business as Transitline, Inc.

4.      Plaintiff, A. Dogic, an Iowa resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around January 2021 to on or around July 2023.

5.      Plaintiff, S. Kujukovic, a Missouri resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on around September 2022 to on or around April 2023. S. Kujukovic does business as Redline Transport, LLC.

6.      Plaintiff, Am. Bajrektarevic, a Florida resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around March 2020 to on or around March 2023. Am. Bajrektarevic does business as Lone Star Transport, Inc., in addition to Coronado Transport, LLC.

7.      Plaintiff, A. Odobasic, a Michigan resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around May 2021 to on or around July 2023. A. Odobasic does business as Green Expedite, LLC.

8.      Plaintiff, A. Maric, a Michigan resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around April 2022 to on or around April 2023.

9.      Plaintiff, Al. Bajrektarevic, a Florida resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around January 2017 to on or around March 2023. Al. Bajrektarevic does business as Alvir Transportation, Inc.

10.     Plaintiff, A. Prenkocaj, a Michigan resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around March 2020 to on or around December 2022. A. Prenkocaj does business as Cap Trucking, LLC.

11.     Plaintiff, D. Dragas, an Iowa resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around February 2022 to on or around October 2022. D. Dragas does business as Gold Star Transport, LLC.

12.     Plaintiff, D. Keserovic, an Iowa resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around January 2021 to on or around May 2022.

13.     Plaintiff, D. Hasanovic, a Florida resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around May 2022 to on or around July 2023.

14.     Plaintiff, E. Gracanin, an Indiana resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around May 2022 to on or around July 2023. E. Gracanin does business as A&G Logistics, LLC.

15.     Plaintiff, E. Topic, an Illinois resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around April 2021 to on or around April 2022.

16.     Plaintiff, H. Dogic, an Iowa resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around October 2022 to on or around August 2023.

17.     Plaintiff, I. Bajrektarevic, a Michigan resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around June 2021 to on or around June 2023.

18.     Plaintiff, K. Hujdur, a Texas resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around April 2021 to on or around March 2022.

19.     Plaintiff, L. Juncaj, a New York resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around November 2021 to on or around May 2023. L. Juncaj does business as LNI Trucking.

20.     Plaintiff, S. Dizdarevic, an Illinois resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around September 2021 to on or around September 2022. S. Dizdarevic does business as Quick Run, Inc.

21.     Plaintiff, S. Mehulic, an Iowa resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around March 2021 to June 2021 and from on or around January 2023 to on or around June 2023.

22.     Plaintiff, V. Maric, a Michigan resident, is an interstate truck driver, who worked for FR8, as what FR8 classified as an independent contractor, from on or around March 2021 to on or around April 2023. V. Maric does business as GTX Logistics, LLC.

23.     Defendant, FR8, is a corporation incorporated under the laws of the State of Florida. FR8 is an active carrier in the United States, assigned Department of Transportation ("DOT") No. 2407155. *See* [SAFER Web - Company Snapshot FR8 SOLUTIONS INC (dot.gov)](#) (last visited April 16, 2024). According to the DOT, FR8 has 98 drivers, and FR8's drivers have recorded over 3.3 million miles in a year. *Id*. Also, according to the DOT, FR8 conducts interstate operations. *Id*. FR8 transacts business in Illinois, including but not limited to sending truck drivers to pick up and drop off locations in Illinois and directing truck drivers to drive directly through Illinois when taking freight to and from other neighboring states. FR8 also communicates with its truck drivers via mobile application transmissions, phone calls, texts, emails and mailings through the United States Postal Service while the truck drivers are in or residents of the State of Illinois.

24.     Defendant, A. Kajdic, is, and at all times relevant was, the Chief Executive Officer of FR8. On information and belief, A. Kajdic has an ownership interest in FR8 and resides in Florida.

25.     Defendant, A. Begovic is, and at all times relevant was, an accountant employed by or acting as an agent of FR8. On information and belief, A. Begovic resides in Florida.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 28 U.S.C. § 1367.

27.     This Court is a proper venue, under 18 U.S.C. § 1965(a) and (b), in addition to 28 U.S.C. § 1391(a), (b), and (c) because a substantial part of the events and omissions giving rise to this action occurred in the Northern District of Illinois. Defendants transact affairs in this District and the ends of justice require that Defendants be brought before this District Court.

## FACTUAL BACKGROUND

28.     FR8 is a trucking company operating in interstate commerce throughout the United States. At FR8's direction, owner-operator truck drivers take loads through interstate commerce to different pickup and delivery locations. When truck drivers are paid by FR8, the truck drivers receive payment statements via email or the U.S. mail system.

29.     Plaintiffs are truck drivers who entered into identical or substantially similar agreements with FR8 from at least January 2017 to August 2023.

30.     Prior to executing contracts with FR8, Plaintiffs each received phone calls, emails and/or text messages across state lines from agents and/or representatives of FR8, including but not limited to A. Kajdic and Haris Durmic ("H. Durmic"), who represented to Plaintiffs that FR8 would pay Plaintiffs 88% of each load they hauled.

31.    At all times relevant, H. Durmic acted as an agent of and at the direction of A. Kajdic. H. Durmic, as a dispatcher in upper management at FR8. On information and belief, A. Kajdic specifically instructed H. Durmic to – or it was otherwise foreseeable to A. Kajdic that – H. Durmic would misrepresent load prices to Plaintiffs through the use of mailings, text messages, app transmissions, emails and/or other interstate wires in furtherance of A. Kajdic's scheme to underpay Plaintiffs.

32.    In reliance on the representations from FR8's agents and/or representatives, including but not limited to A. Kajdic and H. Durmic, Plaintiffs executed the contracts with FR8. Plaintiffs would not have executed the contracts for FR8 or agreed to haul loads if they knew that they were not going to be paid the full 88% linehaul rate.

33.    Plaintiffs entered into identical or substantially similar agreements with FR8, which were titled "Independent Contractor & Non-Compete Agreement" ("Agreement"). *See* an example of one of the Agreements attached as **Exhibit 1**.

34.    Paragraph 2 of the Agreement provides that, as compensation for Plaintiffs' truck driving services, Plaintiffs are entitled to 88% of the linehaul for each load Plaintiffs transported. *Id.* at ¶ 2.

35.    In the transportation industry, paying a truck driver based on a "percentage of the linehaul rate" means paying a driver a percentage of the total price the carrier's third-party broker customers pay the carrier to transport the load.

36.    Despite Plaintiffs taking several loads for FR8 at FR8's direction, FR8 did not pay 88% of the linehaul rate. FR8 paid Plaintiffs significantly less than 88% of the linehaul rate.

37.    FR8 works with third-party brokers, such as Ascent On-Demand, Active On-Demand and Landstar to deliver freight across state lines in the United States. Once FR8 receives

a load rate confirmation from the third-party brokers, FR8 then sends dispatch instructions to the truck drivers instructing them where to pick up and deliver freight.

38.    FR8 communicated and continues to communicate dispatch instructions to their alleged independent contractor truck drivers via mobile application transmissions, emails, texts and phone calls across state lines.

39.    Plaintiffs received dispatch instructions and pay statements from FR8 that under-reported the load price received from FR8's third-party broker customers so that Plaintiffs would not know they were not receiving the full 88% linehaul rate.

40.    Plaintiffs have obtained several rate confirmation sheets that confirm the load price was altered on their dispatch instructions and pay statements to make it appear lower than the price that was originally listed on the rate confirmation sheets received by third-party brokers. Further, Plaintiffs detrimentally relied on the representations falsifying the load rates because they performed work for less than the paid price they agreed to via their Agreements. Plaintiffs' detrimental reliance was reasonable because the statements purportedly came from FR8, a reputable trucking company in the transportation industry, and because Defendants, A. Kajdic and A. Begovic deprived Plaintiffs of the opportunity to confirm the real values of the loads they transported.

41.    For instance, on or around February 28, 2023, Plaintiff E. Husidic was provided dispatch instructions via a Full Circle TMS mobile application ("App") transmission across state lines from an FR8 dispatcher for a delivery from Woodale, IL to Gaffney, SC. *See* February 28, 2023 app screenshot attached as **Exhibit 2**. In the App, the load value is represented to be $2,400. *Id*. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $2,500. *See*

February 28, 2023 email attached as **Exhibit 3**. E. Husidic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $2,500 but only received 88% of $2,400. *Compare* Ex. 2 *with* Ex. 3.

42.    In another example, E. Husidic received dispatch instructions via an App transmission across state lines from an FR8 dispatcher for a delivery from Itasca, IL to Laredo TX. *See* March 31, 2022 app screenshot attached as **Exhibit 4** at p. 1. In the app, the load value is represented to be $6,500. *Id*. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $7,000. *See* March 31, 2022 email attached as **Exhibit 5** at p. 1. E. Husidic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $7,000 but only received 88% of $6,500. *Compare* Ex. 4 *with* Ex. 5.

43.    Additionally, E. Husidic received dispatch instructions via an App transmission across state lines from an FR8 dispatcher for a delivery from Rockford, IL to Wichita, KS. *See* June 14, 2023 app screenshot attached as **Exhibit 6**. In the app, the load value is represented to be $3,000. *Id*. However, in a load confirmation from third-party broker, Landstar, to FR8, the load price is reflected as $3,850. *See* June 14, 2023 Carrier Load Tender & Rate Confirmation attached as **Exhibit 7** at p. 2. E. Husidic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $3,850 but only received 88% of $3,000. *Compare* Ex. 6 *with* Ex. 7.

44.    E. Husidic also received dispatch instructions via an App transmission across state lines from an FR8 dispatcher for a delivery from Milan, IL to Hunstville, AL. *See* April 12, 2022 app screenshot attached as **Exhibit 8**. In the App, the load value is represented to be $3,700. *Id*. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among

other agents and/or employees of FR8, H. Durmic, the load price is reflected as $3,999. *See* April 11, 2022 email attached as **Exhibit 9**. E. Husidic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $3,999 but only received 88% of $3,700. *Compare* Ex. 8 *with* Ex. 9.

45.     E. Husidic received dispatch instructions via an App transmission from an FR8 dispatcher across state lines for a delivery from Laredo, TX to East Moline, IL. *See* June 25, 2023 App screenshot attached as **Exhibit 10**. In the App, the load price is represented to be $5,000. *Id.* at p. 1. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $9,000. *See* June 22, 2023 load confirmation email attached as **Exhibit 11**. E. Husidic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $9,000 but only received 88% of $5,000. *Compare* Ex. 10 *with* Ex. 11.

46.     Plaintiff, S. Cajic, also has evidence that he was not paid the full 88% of the linehaul rate. Like all the other Plaintiffs, S. Cajic received Statements of Earnings and Deductions ("Statements") from FR8 accounting across state lines via email and/or mail. The Statements purportedly show the load rate for each shipment picked up and delivered by Plaintiffs. On or around August 12, 2022, S. Cajic received a Statement via email across state lines showing a total load rate of $6,500 for a delivery from El Paso, TX to Ankeny, IA. *See* August 12, 2022 statement attached as **Exhibit 12**. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $7,000. *See* July 29, 2022 load confirmation email attached as **Exhibit 13**. S. Cajic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $7,000 but only received 88% of $6,500. *Compare* Ex. 12 *with* Ex. 13.

47.     S. Cajic received another Statement via email from FR8 accounting across state lines for a delivery from Cottondale, AL to Spring Hill TN, showing a purported load rate of $5,500. *See* May 19, 2023 statement attached as **Exhibit 14**. However, in a load confirmation email from third-party broker, Ascent On-Demand to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $9,000. *See* May 8, 2023 email attached as **Exhibit 15**. S. Cajic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $9,000 but only received 88% of $5,500. *Compare* Ex. 14 *with* Ex. 15.

48.     S. Cajic received a Statement via email from FR8 accounting across state lines for a delivery from Gainesville, TX to Benson, MN showing a purported rate of $3,500. *See* June 30, 2023 statement attached as **Exhibit 16**. However, in a Carrier Load Tender & Rate Confirmation from third-party broker, Landmark, to FR8 the load price is reflected as $4,500. *See* June 14, 2023 Carrier Load Tender & Rate Confirmation attached as **Exhibit 17** at p. 1. S. Cajic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $4,500 but only received 88% of $3,500. *Compare* Ex. 16 *with* Ex. 17.

49.     In addition to E. Husidic and S. Cajic, Plaintiff, A. Dogic, also has evidence that he was not paid the full amount of compensation that he was entitled to. A. Dogic received a Statement via email from FR8 accounting across state lines for a delivery from Urbandale, IA to Laredo TX showing a purported rate of $6,000. *See* February 4, 2022 Statement attached as **Exhibit 18**. However, in a load confirmation email from third-party broker, Ascent On-Demand to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $7,500. *See* January 19, 2022 email attached as **Exhibit 19** at p. 1. A. Dogic picked up and delivered the load but was

deprived of the full compensation he was entitled to; he should have received 88% of $7,500 but only received 88% of $6,000. *Compare* Ex. 18 *with* Ex. 19.

50.    The same Statement shows that A. Dogic was underpaid for a load from Seguin, TX to Wentzville, MO. Specifically, the Statement shows that A. Dogic was paid 88% of a load price of $5,500. Ex. 18. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $6,500. *See* January 21, 2022 email attached as **Exhibit 20** at p. 1. A. Dogic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $6,500 but only received 88% of $5,500. *Compare* Ex. 18 *with* Ex. 20.

51.    In addition, A. Dogic was underpaid for a load from Mauston, WI to Laredo, TX. The Statement, which was received by A. Dogic via email from FR8 accounting across state lines, shows that A. Dogic was paid 88% of a load price of $10,000. *See* February 18, 2022 statement attached as **Exhibit 21**. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $12,000. *See* February 3, 2022 email attached as **Exhibit 22** at p. 1. A. Dogic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $12,000 but only received 88% of $10,000. *Compare* Ex. 21 *with* Ex. 22.

52.    A. Dogic was underpaid for a load from Oelwein, IA to Grand Island, NE. A. Dogic received a Statement via email from FR8 accounting across state lines showing that A. Dogic was paid 88% of $1,700. *See* April 28, 2023 statement attached as **Exhibit 23**. However, in a Carrier Load Tender & Rate Confirmation from third-party broker, Landstar, to FR8, the load price is reflected as $2,000. *See* April 13, 2023 Carrier Load Tender & Rate Confirmation attached **Exhibit 24** at p. 1. A. Dogic picked up and delivered the load but was deprived of the full compensation he

was entitled to; he should have received 88% of $2,000 but only received 88% of $1,700. *Compare* Ex. 23 *with* Ex. 24.

53. Further, A. Dogic received a Statement via email from FR8 accounting across state lines for a delivery from Cottondale, AL to Spring Hill, TN showing that A. Dogic was paid 88% of a load price of $6,000. *See* February 17, 2023 Statement attached as **Exhibit 25**. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other employees and/or agents of FR8, H. Durmic, the load price is reflected as $10,000. *See* February 7, 2023 load confirmation email attached as **Exhibit 26** at p. 1. A. Dogic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $10,000 but only received 88% of $6,000. *Compare* Ex. 25 *with* Ex. 26.

54. Plaintiff, S. Kujukovic, also has evidence that he was underpaid for load shipments. Specifically, S. Kujukovic received a Statement via email across state lines from FR8 accounting for a shipment from El Paso, TX to Chattanooga, TN showing that S. Kujukovic was paid 88% of a load price of $6,500. *See* March 31, 2023 Statement attached as **Exhibit 27**. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other employees and/or agents of FR8, H. Durmic, the load price is reflected as $7,500. *See* March 14, 2023 load confirmation email attached as **Exhibit 28**. S. Kujukovic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $7,500 but only received 88% of $6,500. *Compare* Ex. 27 *with* Ex. 28.

55. Plaintiff, Am. Bajrektarevic, has evidence of underpayments. Am. Bajrektarevic received a Statement from FR8 accounting across state lines via email for a delivery from Cairo, GA to Laredo, TX, showing a purported load rate of $5,999. *See* February 4, 2022 Statement attached as **Exhibit 29**. However, in a load confirmation email from third-party broker, Ascent On-

Demand, to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $7,399. *See* January 20, 2022 load confirmation email attached as **Exhibit 30**. Am. Bajrektarevic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $7,399 but only received 88% of $5,999. *Compare* Ex. 29 *with* Ex. 30.

56.    The February 4, 2022, Statement also shows a purported load rate of $6,500 for a delivery from Brownsville, TX to Burlington, IA. Ex. 29. But in a Carrier Load Tender & Rate Confirmation from third-party broker, Landstar to FR8, the load price is reflected as $8,500. *See* January 20, 2022 Carrier Load Tender & Rate Confirmation attached as **Exhibit 31**. Am. Bajrektarevic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $8,500 but only received 88% of 6,500. *Compare* Ex. 29 *with* Ex. 31.

57.    Am. Bajrektarevic also received a Statement via email from FR8 accounting across state lines for a delivery from Milan, MI to Canton, MS showing a purported load rate of $5,500. *See* February 11, 2022 Statement attached as **Exhibit 32**. But in a load confirmation from third-party broker, Panther, to FR8, the load price is reflected as $7,000. *See* January 30, 2022 load confirmation attached as **Exhibit 33**. Am. Bajrektarevic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $7,000 but only received 88% of $5,500. *Compare* Ex. 32 *with* Ex. 33.

58.    On another occasion, Am. Bajrektarevic received a Statement via email from FR8 accounting across state lines for a delivery from Laredo, TX to Flint, MI showing a purported load rate of $10,000. *See* February 25, 2022 statement attached as **Exhibit 34**. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other agents and/or

employees of FR8, H. Durmic, the load price is reflected as $15,000. *See* February 14, 2022 load confirmation email attached as **Exhibit 35**. Am. Bajrektarevic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $15,000 but only received 88% of $10,000. *Compare* Ex. 34 *with* Ex. 35.

59.    Am. Bajrektarevic also received a Statement via email from FR8 accounting across state lines for a delivery from Flint, MI to Laredo, TX showing a purported load rate of $7,500. *See* March 4, 2022, statement attached as **Exhibit 36**. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $11,250. *See* February 14, 2022 confirmation email attached as **Exhibit 37**. Am. Bajrektarevic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $11,250 but only received 88% of $7,500. *Compare* Ex. 36 *with* Ex. 37.

60.    In addition, Am. Bajrektarevic received a Statement via email from FR8 accounting across state lines for a delivery from Del Rio, TX to Kansas City, KS showing a purported load rate of $8,000. *See* March 11, 2022 statement attached as **Exhibit 38**. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as $14,999. *See* load confirmation email attached as **Exhibit 39**. Am. Bajrektarevic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received 88% of $14,999 but only received 88% of $8,000. *Compare* Ex. 38 *with* Ex. 39.

61.    Similar to E. Husidic, S. Cajic, A. Dogic, S. Kujukovic and Am. Bajrektarevic, on information and belief, all Plaintiffs were deprived of the full 88% for the loads they took through interstate commerce at the direction of FR8. Plaintiffs took numerous loads to and from the State

of Illinois, but more discovery is necessary in order to obtain the load confirmation sheets evidencing that Plaintiffs were underpaid for the loads taken to and from Illinois, among other states.

62.    Similar to E. Husidic, S. Cajic, A. Dogic, S. Kujokvoic and Am. Bajrektarevic, on information and belief, all Plaintiffs received Statements via mail and/or email, in addition to App transmissions across state lines reflecting an undervalued load amount.

63.    Similar to E. Husidic, S. Cajic, A. Dogic, S. Kujukovic and Am. Bajrektarevic, on information and belief, all Plaintiffs detrimentally relied on the Statements sent to them via mail and/or email, in addition to App transmissions reflecting an undervalued load amount.

64.    On information and belief, despite the fact that Plaintiffs performed all their obligations under the Agreements, i.e., transporting loads at FR8's direction, all Plaintiffs did not receive the full amount they were entitled to pursuant to their Agreements with FR8.

65.    Additional discovery is necessary to obtain the load confirmation emails and Carrier Load Tender & Confirmation from the third-party brokers for Plaintiffs' loads. The additional discovery is needed to determine the full extent of which Plaintiffs were underpaid.

66.    Additional discovery is necessary to determine the full extent of the dispatchers' identities who sent the falsified load values via App transmissions, texts, calls and/or emails to Plaintiffs because the actors involved actively concealed their true identities. For example, on information and belief, FR8 dispatchers used fake names, such as "Jane Smith" and "Black Jack" when communicating with third-party brokers and sending out loads to conceal their true identities. *See* Ex. 39. Regardless, however, the fraudulent App transmissions, texts, calls and/or emails were sent at A. Kajdic's direction or were otherwise foreseeable to A. Kajdic as part of his fraudulent scheme.

67.    Additional discovery is necessary to determine the full extent of the FR8 accountants' identities who sent falsified Statements to Plaintiffs showing the underreported values of the loads. In any event, however, the falsified Statements were sent at the direction of A. Kajdic or were otherwise foreseeable to A. Kajdic as part of his fraudulent scheme. In addition, in some, if not all, cases A. Begovic personally sent the falsified Statements to Plaintiffs.

68.    Defendants A. Kajdic and A. Begovic have intentionally engaged in fraudulent conduct and deceptive practices by taking steps to conceal the underpayments to Plaintiffs.

69.    Defendant, A. Kajdic, has engaged in harassment and intimidation tactics in an effort to prevent Plaintiffs from participating in official proceedings, such as civil lawsuits and agency hearings, and speaking out about their underpayment from FR8. A. Kajdic fired several Plaintiffs once he found out that Plaintiffs were catching on to the fact that they were underpaid.

70.    In a chilling text exchange between Defendant, A. Kajdic, and Plaintiff, Am. Bajrektarevic, A. Kajdic represents that if E. Husidic costs A. Kajdic business with third-party broker, Active On-Demand, then "[h]e will not be alive." *See* text exchange between A. Kajdic and Am. Bajrektarevic attached as **Exhibit 40** at p. 2. The text exchange between A. Kajdic and Am. Bajrektarevic is shown in full detail below with corresponding translations using Google Translate and/or a translator working with Plaintiffs' counsel.



71.     According to Google translate, "Da Ali sta on ima od toga on nazad nece dok sam

ja ziv" means "Yes, but what does he have from that, he won't return as long as I'm alive." Google

Translate (last visited April 15, 2024).



72.    According to Google Translate, "Sto on pametuje I prica okolo" and "Sto ide ovo dalje" means "What is he thinking and talking about" and "What is this going on?" Google Translate (last visited April 15, 2024).



73.    According to Google Translate and a translator working with Plaintiff's counsel, "Sto hiljada u laredu ode glava nekom pa Nek se igra sa fr8" means **"A hundred thousand in Laredo, someone's head goes off, so let him play with fr8"** Google Translate (last visited April 15, 2024) (emphasis added).

74.    A. Kajdic sent the above text messages to discourage Plaintiffs from speaking out about the fact that FR8 is underpaying its truck drivers. The text messages were further sent to

deter Plaintiffs from participating in official proceedings, such as civil actions, criminal complaints or hearings before the Department of Transportation.

75.     A. Kajdic sent the above text messages directly to Plaintiff Am. Bajrektarevic and indirectly to E. Husidic and similarly situated Plaintiffs. The content of the text messages was relayed to E. Husidic and similarly situated Plaintiffs. A. Kajdic intended that the content of the text messages be relayed directly and/or indirectly to Plaintiffs to prevent Plaintiffs from speaking out about the underpayments and Defendants other wrongful conduct as alleged in this complaint.

76.     Plaintiffs did not become aware of the underpayments until on or around June 2023, when they received the load confirmations of third-party brokers showing the real load values from a dispatcher cooperator within FR8. A. Kajdic went through great lengths to conceal the true values from Plaintiffs, and Plaintiffs would not have discovered the underpayments if it was not for the cooperator within FR8, who revealed Defendants' misconduct to Plaintiffs.

77.     Shortly after Plaintiffs, E. Husidic, Am. Bajrektarevic, S. Cajic and A. Dogic discovered the underpayments, A. Kajdic terminated their contracts on or around June 2023. On information and belief, several of Plaintiffs' contracts were terminated to prevent them from inquiring further about the falsified dispatch instructions and Statements. Once A. Kajdic terminated Plaintiffs' contracts, A. Kajdic locked Plaintiffs out of their App accounts to prevent them from gathering evidence corroborating their claims of underpayments.

78.     Not only did A. Kajdic terminate E. Husidic's contract, but A. Kajdic also wrongly stole the truck E. Husidic was leasing from FR8 in Illinois. More specifically, pursuant to an agreement, E. Husidic leased a truck from FR8. *See* E. Husidic's lease agreement attached as **Exhibit 40**. And after E. Husidic discovered the underreporting of the load values, A. Kajdic wrongfully took possession of the truck in breach of the lease agreement. *See Id*. On or around

August 2023, A. Kajdic, personally, or an agent acting at A. Kajdic's direction, traveled to Island Lake, Illinois, where the truck was located, and wrongfully took the truck. Then, A. Kajdic, personally, or an agent acting at A. Kajdic's direction, transported the truck through interstate highways to Florida, where A. Kajdic posted a picture of the truck on Facebook to taunt E. Husidic. *See* photograph attached as **Exhibit 41**.

79.    On information and belief, after transporting the truck to Florida, A. Kajdic wrongfully sold the truck to a third party. *See* Ex. 40.

## CLASS ACTION ALLEGATIONS

80.    Plaintiffs bring this action on behalf of themselves and the following class of similarly situated individuals or entities, defined as:[1]

> All individual persons or legal entities that entered into agreements with FR8 between January 2017 and August 2023 to transport loads across state lines at the direction of FR8, received dispatch instructions and/or Statements from any employees and/or agents from FR8, that transported loads across state lines for FR8 and were paid pursuant to the agreements, where the individuals or entities were promised compensation in the amount of 88% of the linehaul rate in exchange for transporting the loads ("Class").

81.    The Class defined above satisfies the requirements of Rules 23(a) and 23(g).

(a)    Numerosity.    The individual members of the Class are so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. On information and belief, the Class contains at least 40 and up to 98 individuals. According to DOT, FR8 has 98 truck drivers. All 98 truck drivers potentially signed the same or substantially the same agreements providing for compensation in the form of 88% of the linehaul rate. The number and identities of class members can be ascertained through business records regularly maintained by FR8 and third-party brokers.

---

[1] Plaintiffs reserve the right to modify the class definition and the class period based on the results of discovery and/or rulings of the Court.

Members of the Class can be notified of the pending action by email, mail and supplemented by published notice, if necessary.

(b)    Commonality. Common questions of law and fact predominate over individual issues affecting only individual Class members. These common legal and factual issues include, *inter alia*, whether Plaintiffs were signatories individually to the same or substantially the same contract and were all not paid in the same or substantially the same manner; whether Plaintiffs were intentionally deceived by receiving dispatch instructions underreporting the true value of the loads; and whether Plaintiffs were intentionally deceived by receiving Statements underreporting the true value of the loads. The only substantive difference between Plaintiffs' claims is the ministerial task of arithmetically calculating the number of damages individually.

(c)    Typicality.    The claims of the representative Plaintiffs are typical of the claims of the members of the class. The representative Plaintiffs and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendants.

(d)    Adequacy.    Plaintiffs will fairly and adequately protect and represent the interests of the Class because (1) Plaintiffs have retained competent and experienced counsel that have the time and resources to litigate this case; (2) Plaintiffs are members of the Class they seek to represent, their claims are typical of the Class and they have suffered substantially similar injuries to those suffered by the rest of the Class; and (3) Plaintiffs' interest in obtaining monetary relief for their Class is consistent with and not antagonistic to the interests of the Class.

82.    The proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(3).

(a)    Predominance.    Common questions predominate over any individual questions because the important and prevalent issues in this case concern Defendants' conduct and

its effects, which are common to the Class. Individual issues are minor and may be nothing more than damage calculations pursuant to a formula.

(b)     Superiority.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Plaintiffs and the Class, while collectively substantial, are relatively small per Class member compared to the burden and expense required to individually litigate their claims. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court. Both liability and damages can be determined in one class-wide proceeding.

**COUNT I – CIVIL RICO 18 U.S.C. § 1962(c)**
***Plaintiffs, individually and on behalf of the Class v. Alen Kajdic and Azra Begovic***

83.    Plaintiffs incorporate and reallege paragraphs 1 through 82 above as though fully set forth here.

84.    At all relevant times, each RICO Defendant was a "person" within the meaning of RICO, 18 U.S.C. § 1964(c).

(a)     Defendant, A. Kajdic, is CEO of FR8.

(b)     Defendant, A. Begovic, is an accountant at FR8.

85.    At all relevant times, each RICO Defendant participated in the operation or management of FR8.

86.    A. Kajdic, maintains control over FR8 and participates in corporate decision making, including but not limited to recruiting drivers, maintaining the FR8 driver fleet, managing

internal operations and signing contracts on behalf of FR8. Additionally, A. Kajdic made materially false representations to Plaintiffs as to the load price amounts and how much Plaintiffs would be paid for each load in their scope of work with FR8, and A. Kajdic used his power within FR8 to make its employees do the same. At A. Kajdic's direction, FR8's employees and/or agents, such as H. Durmic, used interstate wires and mail to misrepresent load prices to Plaintiffs. A. Kajdic intended Plaintiffs to detrimentally rely on the materially false representations, and Plaintiffs did, in fact, rely on the false representations to their detriment by being underpaid for the work they performed for FR8.

87.     A. Begovic is an accountant at FR8 and was in charge of sending out Statements of Earnings and Deductions to Plaintiffs, in addition to running the financial operations of FR8. A. Begovic made materially false representations as to load price amounts to Plaintiffs using interstate wires and mail. A. Begovic intended Plaintiffs to detrimentally rely on the materially false representations, and Plaintiffs did, in fact, rely on the false representations to their detriment by being underpaid for the work they performed for FR8.

88.     At all relevant times, FR8, a corporate legal entity, constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4). FR8 employs several people besides the RICO Defendants. FR8 was engaged in, and its activities effected, interstate commerce within the meaning of RICO, 18. U.S.C. § 1962(c).

89.     Specifically, FR8's activities effected interstate commerce because FR8 contracts with third-party brokers across state lines, such as Ascent On-Demand and Landstar, to transport freight across state lines. FR8 and truck drivers acting under FR8's direction use interstate highways to transport freight. And FR8's agents and/or employees send dispatch instructions via text message, phone calls, emails and App transmissions to truck drivers, including Plaintiffs,

across state lines. FR8's agents and/or employees also sent Plaintiffs Statements using the U.S.

mail system, which reflect altered load price amounts.

90.     FR8 has an ascertainable structure and function separate and apart from the pattern

of racketeering activity in which the RICO Defendants have engaged. FR8 performs certain

legitimate and lawful activities that are not being challenged in this Complaint, including but not

limited to contracting with brokers, maintaining a warehouse storing shipments and employing

several individuals to conduct legitimate business in interstate commerce.

91.     In addition to FR8's legitimate activities, each RICO Defendant used FR8 as a

vehicle to commit federal crimes.

92.     Through their wrongful conduct as alleged herein, the RICO Defendants, in

violation of 18 U.S.C. § 1962(c), conducted and participated in the conduct of FR8's affairs,

directly and indirectly, through a "pattern of racketeering activity," as defined in U.S.C. 1961(5),

prior to and during the Class Period, including (a) mail fraud, in violation of 18 U.S.C. § 1341,

and (b) wire fraud, in violation of 18 U.S.C. § 1343. Such predicate acts include the following:

(a)     by mailing or causing to be mailed and otherwise knowingly agreeing to the
mailing of various materials and information including, but not limited to,
materially false Statements and/or dispatch instructions, which report
undervalued load prices, to deceive Plaintiffs into believing they were being
paid the full 88% of each load, when, in fact, Plaintiffs were being paid 88%
of an undervalued load, while each RICO Defendant retained the excess
amount for themselves, with each such separate mailing constituting a
separate and distinct violation of 18 U.S.C. § 1341; and

(b)     by transmitting or causing to be transmitted and otherwise knowingly
agreeing to the wire transmittal of various materials and information
including, but not limited to, materially false Statements and/or dispatch
instructions, which report undervalued load prices, to deceive Plaintiffs into
believing they were being paid the full 88% of each load, when, in fact,
Plaintiffs were being paid 88% of an undervalued load, while each RICO
Defendant retained a benefit of the excess amount for themselves, with each
such separate transmission constituting a separate and distinct violation of
18 U.S.C. § 1343.

93.    In furtherance of their scheme to defraud Plaintiffs, the RICO Defendants, in violation of 18 U.S.C. §§ 1341 and 1343, repeatedly and regularly used the U.S. Mail and interstate wire transmissions, including texts, phone calls, emails and App communications, to deceive Plaintiffs regarding the price for each load that Plaintiffs carried across state lines. A. Kajdic directed FR8 dispatchers, such as H. Durmic and/or other FR8 employees, to send fraudulent Statements and/or dispatch instructions to Plaintiffs or knew that such fraudulent mailings and transmissions were foreseeable in furtherance of the fraudulent scheme. At A. Kajdic's direction, A. Begovic knowingly sent false Statements to Plaintiffs showing incorrect load amounts via mail and email.

94.    The foregoing communications via U.S. mail and interstate wire transmissions contained false and fraudulent misrepresentations and/or omissions of material facts, had the design and effect of preventing a meaningful evaluation and review of the real prices of the loads Plaintiffs carried, and/or otherwise were incidental to an essential part of the RICO Defendants' scheme to defraud. The misrepresentations and omissions in these materials have included and include those set forth previously in the complaint.

95.    Each such use of the U.S. Mail and interstate wire transmissions alleged in this Complaint constitutes a separate and distinct predicate act.

96.    The above-described acts of mail and wire fraud are related because they each involve common members, common claim practices, common results impacting upon common victims, and are continuous because they occurred over several years, and constitute the usual practice of the RICO Defendants such that they amount to and pose a threat of continued racketeering activity. The RICO Defendants' scheme to defraud is open-ended and not inherently terminable.

97.    Also, Defendant, A. Kajdic, engaged in witness and/or victim tampering, both of which constitute federal crimes. A. Kajdic sent text messages to one of Plaintiffs regarding Plaintiff, E. Husidic and similarly situated Plaintiffs. *See* Ex. 40.

98.    A. Kajdic threatened the use of physical force against E. Husidic and similarly situated Plaintiffs. Specifically, A. Kajdic made the following threatening representations, among others:[2]

(a)    Find someone to break every bone in [E. Husidic's] body;

(b)    leave us the f**k alone or I will f**king personally hit him where it hurts most;

(c)    Too bad he doesn't have kids but he has a wife;

(d)    If he cost me active … he will not be alive;

(e)    A hundred thousand in Laredo, someone's head goes off, so let him play with fr8;

(f)    Just warning…tell them to stop pushing…or it won't be good; and

(g)    someone will end up locked up or…dead.

*See Id.*

99.    A. Kajdic made the above threatening representations with the intent to influence, delay or prevent E. Husidic and other individuals from presenting evidence against him in an official proceeding, such as in court or before DOT. DOT is specifically mentioned in A. Kajdic's messages. *Id.* at p. 1. A. Kajdic also made the above threatening representations to intimidate or corruptly persuade E. Husidic and other similarly situated Plaintiffs from reporting A. Kajdic's behavior to law enforcement, DOT or a judge. In addition, A. Kajdic's threatening representations

---

[2] Because the threatening statements made by A. Kajdic were sent via short text messages, some in Bosnian, in quick succession, some of the statements are paraphrased or translated. For a full picture of A. Kajdic's threatening statements see the screenshots above or Ex. 40.

were made with an intention to intimidate E. Husidic or other similarly situated persons from filing suit, such as the case *sub judice*.

100. E. Husidic and Plaintiffs are direct intended victims of A. Kajdic's threatening statements. A. Kajdic's statements were made to discourage through intimidation E. Husidic and Plaintiffs from filing suit. As FR8's CEO, A. Kajdic, put it, this is a "warning" and "someone will end up locked up or ... dead." *See Id*.

101. Each of A. Kajdic's threatening statements directed to one of Plaintiffs and concerning E. Husidic and similarly situated Plaintiffs is a distinct and separate predicate act. Also, A. Kajdic's threatening statements constitute a "threat involving murder...which is chargeable under" Illinois state "law and punishable by imprisonment for more than one year[.]" 18 U.S.C. § 1961(1)(A).

102. The direct and intended victims of the pattern of racketeering activity described previously herein, including victim tampering, witness tampering and state law violations, in addition to mail and wire fraud, are Plaintiffs, against whom the RICO Defendants improperly stole from.

103. Plaintiffs were injured by reason of the RICO Defendants' RICO violations because they directly and immediately were underpaid for the work they performed. Plaintiffs also suffered stress and anxiety as a result of the death threats and/or threats of physical violence from A. Kajdic. The RICO Defendants deprived Plaintiffs of the knowledge necessary to challenge their underpayments because the RICO Defendants intentionally failed to provide Plaintiffs with accurate dispatch instructions and Statements, nor did the RICO Defendants provide Plaintiffs with the original load confirmations from third-party brokers. Plaintiffs' injuries were proximately caused by the RICO Defendants' violations of 18 U.S.C. § 1962(c) because their injuries were the

foreseeable, direct, intended and natural consequence of the RICO Defendants' RICO violations (and commission of underlying predicate acts) and, but for the RICO Defendants' RICO violations (and commission of underlying predicate acts), they would not have suffered these injuries.

**PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of the Class, respectfully pray for the following relief against each RICO Defendant:

(a)   An order certifying the Class as defined above, appointing Plaintiffs' counsel as Class Counsel for the Class and appointing Plaintiffs, E. Husidic, S. Cajic, A. Dogic, S. Kujukovic and Am. Bajrektarevic as class representatives;

(b)   An award of all economic, monetary, actual, consequential, compensatory, damages available under law, including but not limited to, treble damages;

(c)   An award of reasonable litigation expenses and attorneys' fees;

(d)   Other further relief this Court deems just.

**COUNT II – BREACH OF CONTRACT**
***Plaintiffs on behalf of themselves and the Class v. FR8***

104.   Plaintiffs incorporate and reallege paragraphs 1 through 82 above as though fully set forth here.

105.   Plaintiffs entered into valid and binding Agreements with FR8, where Plaintiffs agreed to provide certain trucking services, such as picking up, transporting and delivering loads in interstate commerce in exchange for compensation in the form of 88% of the linehaul rate for each load transported by Plaintiffs. *See* Ex. 1.

106.   Plaintiffs performed their contractual obligations under the Agreements by, *inter alia*, transporting each load at FR8's direction through interstate commerce.

107.   FR8 breached the Agreements when it, *inter alia*, underpaid Plaintiffs for each load.

108.    Plaintiffs sustained damages as a result of FR8's breach of the Agreements, namely, Plaintiffs did not receive the full 88% of the linehaul rate for each load as promised under the Agreement.

**PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of the Class, respectfully pray for the following relief against FR8:

(a)    An order certifying the Class as defined above, appointing Plaintiffs' counsel as Class Counsel for the Class and appointing Plaintiffs, E. Husidic, S. Cajic, A. Dogic, S. Kujukovic and Am. Bajrektarevic as class representatives;

(b)    An award of all economic, monetary, actual, consequential, compensatory, damages available under law;

(c)    An award of reasonable litigation expenses and attorneys' fees; and

(d)    Other further relief this Court deems just.

**DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of themselves and all others similarly situated, hereby demand a trial by jury of all issues triable.

Respectfully submitted,

JAFFE & BERLIN, LLC

By: */s/ Rain Montero*
One of Plaintiffs' Attorneys

Jay S. Berlin, Esq. (jberlin@jaffeberlin.com)
Rain Montero, Esq. (rmontero@jaffeberlin.com)
JAFFE & BERLIN, L.LC.
111 W. Washington, Suite 900
Chicago, IL 60602
(312) 372-1550