UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| EDIN HUSIDIC, ADIS DOGIC SAMIR CAJIC, SEMIR KUJUKOVIC ADIS ODOBASIC, ALIJA MARIC ALVIR BAJREKTAREVIC, AMIR BAJREKTAREVIC, ANTON PRENKOCAJ, DALIBOR DRAGAS DAMIR KESEROVIC, DZEMAIL HASANOVIC ELVIS GRACANIN, ELVIS TOPIC HASAN DOGIC, IRFAN BAJREKTAREVIC KENAN HUJDUR, LJEKA JUNCAJ SAMIR DIZDAREVIC, SAMIR MEHULIC VAHID MARIC, BESIR CATIC, Plaintiffs, v. FR8 SOLUTIONS, INC., ALEN KAJDIC, AND AZRA BEGOVIC, Defendants. | CIVIL ACTION NO. 24-00963-WGY |

YOUNG, D.J.[1]                                February 19, 2026

**MEMORANDUM AND ORDER**

The Defendant Fr8 Solutions, Inc. ("Fr8 Solutions") is a logistics company that acts as a middleman between customers looking to transport items and truck drivers. The Plaintiffs are former independent contract drivers for Fr8 Solutions ("Drivers"). Motion to Dismiss ("Mot. Dismiss"), ECF No. 52 at

---

[1] Of the District of Massachusetts, sitting by designation.

[1]

2. Alen Kajdic ("Kajdic") is the Chief Executive Officer ("CEO") of Fr8 Solutions and Azra Begovic ("Begovic") is an accounting executive (now the Chief Financial Officer "CFO") at the company. Amended Complaint ("Am. Compl."), ECF No. 22 ¶¶ 28-29. The Drivers allege four claims against Fr8 Solutions. All hinge largely on Fr8 Solutions' alleged misrepresentation to the Drivers of the rates it was paid by third party customers per load, thus underpaying the Drivers in violation of their form contract. This Court **DENIES** in part and **ALLOWS** in part the Motion to Dismiss, ECF No. 52. The motion to dismiss is **DENIED** on all counts as to Fr8 Solutions and Kajdic and **ALLOWED** on counts I and II as to Begovic.

I. **PROCEDURAL HISTORY**

Edin Husidic ("Husidic") and twenty other drivers filed this suit against Fr8 Solutions, Kajdic, and Begovic (collectively, "the Defendants") on May 23, 2024 in the United States District Court for the Northern District of Illinois. Class Action Compl., ECF No. 1. The Drivers amended the complaint on September 3, 2024. First Am. Compl. ("Am. Compl."), ECF Nos. 22, 24. The parties stipulated to a transfer of venue, ECF No. 23, and the case was transferred to the United States District Court for the Middle District of Florida on September 20, 2024. ECF No. 30. The Defendants filed the instant Motion to Dismiss the First Amended Class Action

Complaint, ECF No. 52, on October 11, 2024. The action was reassigned to this Court for the resolution of dispositive motions on May 22, 2025. ECF No. 67. The matter has been fully briefed. See Mot. Dismiss Pls.' First Am. Class Action Compl. ("Mot. Dismiss"), ECF No. 52; Pls.' Resp. Opp'n Defs.' Mot. Dismiss ("Opp'n Mot. Dismiss"), ECF No. 58. The Court held a hearing on January 6, 2026. See Minute Entry, ECF No. 132. During the hearing, the parties affirmed the substance of the Status Report filed on December 31, 2025. See ECF No. 130. Based on the oral representations of the parties, this Court **DISMISSES** the class action allegations and considers the four counts outlined in the First Amended Complaint as to the twenty-one named plaintiffs. The Court **ADDS** Besir Catic as the twenty-second named plaintiff to this action.

The Drivers bring four claims. The first is a civil RICO claim under 18 U.S.C. § 1962(c). Am. Compl. ¶¶ 87-107. The second is a breach of contract claim. Am. Compl. ¶¶ 108-112. The third alleges violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201-501.23. Am. Compl. ¶¶ 113-124. The fourth claim alleges violation of the federal Truth in Leasing Act, codified at 49 U.S.C. § 14704(a)(2). Am. Compl. ¶¶ 125-144.

[3]

## II. FACTS PLAUSIBLY PLED

The Drivers entered into individual contracts with Fr8 Solutions. "At FR8's direction and pursuant to contracts with FR8, owner-operator truck drivers take loads through interstate commerce to different pickup and delivery locations." Am. Compl. ¶ 33. The Drivers allege that the form contract they each signed with Fr8 Solutions included as the compensation term "88% of line haul rate" (with some minor variation in form). Am. Compl. ¶ 2.

The First Amended Complaint alleges twenty-one individual instances in which individual drivers were told (via email and an app) that the load value for each trip was **lower** than the amount that the customers ultimately paid to Fr8 Solutions. One alleged instance of underpayment, typical of the others, is included for reference:

> Am. Bajrektarevic also received a Statement via email from FR8 accounting across state lines for a delivery from Flint, MI to Laredo, TX showing a purported load rate of **$7,500.** See March 4, 2022, statement attached as Exhibit 36. However, in a load confirmation email from third-party broker, Ascent On-Demand, to, among other agents and/or employees of FR8, H. Durmic, the load price is reflected as **$11,250.** See February 14, 2022 confirmation email attached as Exhibit 37. Am. Bajrektarevic picked up and delivered the load but was deprived of the full compensation he was entitled to; he should have received **88% of $11,250** but only received **88% of $7,500.** Compare Ex. 36 with Ex. 37.

Am. Compl. ¶ 64 (emphasis added).

The Drivers also include screenshots of purported text messages from Kajdic to the individual plaintiffs threatening them with physical harm. See Am. Compl. ¶¶ 73-76. The Drivers allege that Kajdic terminated the contracts between the individual drivers and Fr8 "to prevent them from inquiring further about the falsified dispatch instructions and Statements. Once . . . Kajdic terminated [the Drivers'] contracts, . . . Kajdic locked [the Drivers'] out of their App accounts to prevent them from gathering evidence corroborating their claims of underpayments." Am. Compl. ¶ 80.

Finally, the Drivers allege that Kajdic "wrongfully took possession of [Husidic's] truck in breach of the lease agreement," Am. Compl. ¶ 81, and "transported the truck through interstate highways to Florida, where . . . Kajdic posted a picture of the truck on Facebook to taunt . . . Husidic" and then sold it "to a third party." Id. ¶¶ 81-82.

The Motion to Dismiss argues the language and meaning of the contracts, the involvement of Begovic, and the translation from Bosnian into English of the alleged threats made by Kajdic fails to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

[5]

## III. ANALYSIS

### A. Legal Standard

To withstand a motion to dismiss, a complaint must "state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). The complaint must include sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts "draw all reasonable inferences in the plaintiff's favor," Sebastian v. Ortiz, 918 F.3d 1301, 1307 (11th Cir. 2019), but they disregard statements that "are merely legal conclusions." American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1293 (11th Cir. 2010).

### B. Contract Claim (Count II)

The motion to dismiss rests primarily on the Defendants' argument that the language of the contract is "unambiguous" and "[c]ounts I, II, III, and IV are all premised on [the Drivers'] incorrect interpretation of the contract." Mot. Dismiss at 3, 5.

The Eleventh Circuit, in interpreting Florida state contract law under Erie R. Co v. Tompkins, 304 U.S. 64 (1938), has ruled that "where the language of an agreement is unambiguous, the legal effect of that language is a question of law and, as such, may be declared by the court." Dear v. Q Club Hotel, LLC, 933 F.3d 1286, 1298 (11th Cir. 2019) (citing

[6]

Maccaferri Gabions, Inc. v. Dynateria Inc., 91 F.3d 1431, 1439 (11th Cir. 1996)). More recently, the Eleventh Circuit has held that "[a] contract is ambiguous if it is susceptible to different, reasonable interpretations." Action Nissan, Inc. v. Hyundai Motor Am., No. 22-13153, 2024 WL 3888756, at *7 (11th Cir. Aug. 21, 2024) (citing Nationstar Mortg. Co. v. Levine, 216 So. 3d 711 (Fla. Dist. Ct. App. 2017)). "Nevertheless, where one interpretation of the contract would lead to an absurd result and another interpretation would be consistent with reason and probability, courts should adopt the rational interpretation." Id. (citing Quinerly v. Dundee Corp., 31 So. 2d 533, 534-35 (Fla. 1947)).

The Defendants claim that the contract is unambiguous, and that the plain language of the compensation term -- "88% of line haul rate" -- means a variable, one-time offer to each truck driver for each load. See Mot. Dismiss 13. The Defendants argue that the phrase "agreed upon on a truckload basis for tractor," located in Addendum A of the form contract, supports the contention that the "line haul rate" in the contract was entirely divorced from the "gross revenue" that Fr8 Solutions was paid by the third party for the journey. Id. at 12-13.

This Court concludes that this interpretation constitutes an "absurd result" and instead, at least for the purpose of ruling on this motion to dismiss, adopts the "rational

[7]

interpretation" offered by the Drivers.  See Action Nissan, 2024 WL 3888756 at *7.  The "rational interpretation" of the contract suggests that "88% of line haul rate" means eighty-eight percent of "the total price the carrier's third-party broker customers pay the carrier to transport the load." Am. Compl. ¶ 40.  Or, said another way, eighty-eight percent of the "gross revenue." Opp'n. Mot. Dismiss 11.

The Defendants urge this Court to examine the "four corners" of the contract.  Mot. Dismiss 12.  In doing so, one finds two references in the contract itself to a "gross revenue tax" to be paid by the Drivers.  See Contract of Edin Husidic, ECF No. 1-1, at 4, 12.  The Court also reads the phrase "agreed upon on a truckload basis for tractor" as directed to the driver's ability to accept or reject each load as an independent contractor, as suggested by the Drivers during oral argument, rather than as supporting the Defendants' contention that the rate itself was independently calculated.

Webster's Third New International Dictionary (1961) defines "line haul" as "the actual transporting of items (as freight) between terminals as distinguished from pickup, delivery, and other terminal services." Id. at 1315.  This definition supports the Drivers' contention that the "line haul rate" encompasses the gross revenue that was paid to Fr8 Solutions for

[8]

the "transporting" of freight "between terminals." The Defendants offer no contrary authority.

Other courts seem to understand the phrase "line haul" similarly. See Broome v. CRST Malone, Inc., No. 2:19-CV-01917-MHH, 2021 WL 9439798 at *8 (N.D. Ala. Sept. 24, 2021) ("gross line haul revenue [means] the rate per mile multiplied by miles traveled for a haul."); Holston Invs. Inc. B.V.I. v. Lanlogistics, Corp., No. 08-21569-CIV, 2010 WL 2495413 at *3 (S.D. Fla. June 18, 2010) ("A line haul rate is the cost of transporting a package from [one location] to [a different location]."); Owner-Operator Indep. Drivers Ass'n, Inc. v. Bulkmatic Transp. Co., 503 F. Supp. 2d 961, 965 (N.D. Ill. 2007) (referencing line haul rate as "the charge for the actual transportation of freight from its point of origin to its destination (the 'line haul')"). Defendants offer no cases that support their preferred definition.

Finally, the surplusage canon suggests that there is no reasonable way to read the contract in accordance with Defendants' desired meaning. The Eleventh Circuit has ruled that "every word in a contract should be given effect and treated consistently, such that it is not redundant." Creative Choice Homes XXX, LLC v. Amtax Holdings 690, LLC, 162 F.4th 1083, 1096 (11th Cir. 2025) (citing Royal Am. Realty, Inc. v. Bank of Palm Beach & Tr. Co., 215 So. 2d 336, 338 (Fla. 4th DCA

1968); Scalia & Garner, READING LAW 174). Were this Court to accept Defendants' interpretation of "88% of line haul rate," the term identifying "88% of" the rate and deducting a 12% overhead charge would be redundant. Were every line haul "offer" to include a rate that was **already** reduced from the third-party gross revenue, why would any driver agree to an additional 12% reduction after accounting for an already-lowered rate? The inclusion of the "88% of" term indicates that Fr8 Solution's "cut" as the middleman arranging the transaction would be 12%, and the drivers would receive 88% of the gross revenue. To suggest otherwise renders redundant the inclusion of the 12% deduction entirely, in violation of the surplusage canon.

Since the Court rules these contracts are unambiguous, and interprets the phrase "88% of line haul rate" to refer to gross revenue as matter of law,[2] the motion to dismiss as to count II for Fr8 Solutions and Kajdic is **DENIED**.

---

[2] Should this ruling be premature (see Elite Wheel Distributors, Inc. v. Wheel Pros, LLC, No. 8:23-CV-930-KKM-CPT, 2025 WL 2710602, at *7 (M.D. Fla. Sept. 23, 2025); Alhassid v. Bank of Am., 60 F. Supp. 3d 1302, 1312 (S.D. Fla. 2014)), the contract language is, at a bare minimum, ambiguous on this point and the contract ought be interpreted at the motion to dismiss stage against the drafter -- here Fr8 Solutions (see Arriaga v. Florida Pac. Farms, L.L.C., 305 F.3d 1228, 1247-48 (11th Cir. 2002)), so the result is the same.

As for Begovic, there are no particularized allegations that she drafted, signed, or had any part in the creation or individual administration of the contracts. Allegations that "Begovic participated in the fraud by knowingly sending false Statements to Plaintiffs showing incorrect load amounts via mail and email" are conclusory and not plausibly pleaded. See Opp. Mot. Dismiss at 16, citing Am. Compl. ¶ 97. The motion to dismiss as to count II for Begovic is therefore also **ALLOWED**.

### C. RICO Claim (Count I)

Having resolved the contract issue, this Court now moves to the RICO claim. The Drivers bring claims under 18 U.S.C. § 1962(c), alleging an unlawful "scheme to defraud" and intimidate the Drivers. See Am. Compl. ¶¶ 97, 104. The statute states that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). The Eleventh Circuit recently restated that "Civil RICO claims 'are essentially a certain breed of fraud claims, [which] must be pled with an increased level of specificity' under Federal Rule of Civil Procedure Rule 9(b)." George v. Griffin, No. 24-13718, 2025 WL 3172488, at *3 (11th Cir. Nov. 13, 2025) (citing Ambrosia Coal & Constr. Co. v.

[11]

Morales, 482 F.3d 1309, 1316 (11th Cir. 2007)). The Eleventh Circuit requires that "a RICO claim must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the [p]laintiffs; and (4) what the [d]efendants gained by the alleged fraud'" in order to satisfy Rule 9(b). Id. (citing Ambrosia Coal, 482 F.3d at 1316-17).

This Court agrees that "a RICO claim is not the appropriate forum in which to litigate a breach of contract case." Smart Sci. Lab'ys, Inc. v. Promotional Mktg. Servs., Inc., No. 807-CV-1554-T-24EAJ, 2008 WL 2790219, at *12 (M.D. Fla. July 18, 2008) (citing Sanchez v. Triple-S Mgmt. Corp., 492 F.3d 1, 12 (1st Cir. 2007) ("breach of contract itself [does not] constitute a scheme to defraud."); Perlman v. Zell, 185 F.3d 850, 853 (7th Cir. 1999) ("Breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud. It is correspondingly difficult to recast a dispute about broken promises into a claim of racketeering under RICO.")). The contract dispute issue discussed above, therefore, does not support the RICO claim.

Kajdic's alleged threats of physical harm to the Drivers, however, demonstrate a departure from a run-of-the-mill contract

[12]

dispute. These alleged threats[3] are illegal under federal law and resemble the very mafia-like acts for which Congress created RICO. See Cisneros v. Petland, Inc., 972 F.3d 1204, 1208 (11th Cir. 2020).

18 U.S.C. § 1961(1) defines the "racketeering activity" proscribed by 18 U.S.C. § 1962(c). Section 1961 includes acts indictable under 18 U.S.C. § 1512 and 18 U.S.C. § 1513, which relate to tampering with, and retaliating against, a witness, victim, or an informant. Kajdic's alleged text messages sent to named plaintiff Amir Bajrektarevic stated: "if K. Hujdur costs . . . Kajdic business with third-party broker, Active On-Demand, then '[h]e will not be alive'"; "leave us the f**k alone or I will f**king personally hit him where it hurts most"; "[t]oo bad he doesn't have kids but he has a wife"; "someone will end up locked up or . . . dead"; and "[f]ind me someone . . . [t]o break every bone . . . [i]n his body." See Am. Compl. ¶¶ 73, 102; ECF No. 24-7 at 2-4. Kajdic's string of threats in the text messages reference plaintiff Hujdur's attempts to report Kajdic's behavior to the Department of Transportation ("DOT") and raise the underpayment issue with customers. See Am. Compl. ¶ 103; ECF 24-7 at 2. These allegations are specific instances of Kajdic allegedly threatening physical harm to the

---

[3] The Defendants dispute the use of Google translate but do not offer a competing translation. Mot. Dismiss 11.

individually named plaintiff drivers. While the dates that the screenshots were taken are not included in ECF No. 24-7, this omission may easily be cured by the Drivers. The time, persons, and specific nature of the threats, made for the purpose of protecting the business relationships and profits of corporate entity Fr8 Solutions, are otherwise adequately pled.

The Drivers thus sufficiently allege that Kajdic himself may have committed necessary requisite acts. At the same time, they have failed to allege that Begovic participated at all in these acts. There is no allegation that Begovic read, authored, or was even aware of the threatening text messages that Kajdic allegedly sent to the drivers. See Am. Compl. ¶¶ 72-78. Thus, the "who, what, when, where, and how" of Begovic's participation in these alleged threats is nonexistent. See Petland, 972 F.3d at 1217. The RICO claim against Begovic is not properly pled.

Accordingly, the motion to dismiss as to the RICO claim (count I) is **DENIED** as to Kajdic and **ALLOWED** as to Begovic.

### D. Florida Deceptive and Unfair Trade Practices Act Claim (Count III)

The motion to dismiss does not independently address count III, but rather insists that this claim must be dismissed because it rests on another claim. Mot. Dismiss at 7-8. "[T]he [Florida Deceptive and Unfair Trade Practices Act] and [Truth in Leasing Act] claims are stacked on the failed RICO claim.

Accordingly, Counts II, III, and IV collapse and must be dismissed, as well." Id. (footnote omitted).

The Florida Deceptive and Unfair Trade Practices Act declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1) (2025). The Drivers have plausibly alleged that by misrepresenting and concealing the true value of the line haul rate, the Defendants engaged in unfair, deceptive and unconscionable business practices in violation of the FDUTPA. Because the Defendants do not challenge this claim on an independent basis, the motion to dismiss as to count III is **DENIED** for all defendants.

### E. Truth in Leasing Act Claim (Count IV)

The motion to dismiss also does not independently address count IV. Mot. Dismiss at 7-8. The Drivers have pled an adequate claim under the Truth in Leasing Act based on the contract interpretation holding. Because the Defendants did not independently dispute this claim and supporting allegations, the motion to dismiss as to count IV is **DENIED** for all defendants.

### IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss, ECF No. 52, is **DENIED** on all counts as to Fr8 Solutions and Kajdic, and **ALLOWED** on counts I and II as to Begovic.

[15]

**SO ORDERED.**

*/s/ William G. Young*
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[4]

---

[4] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 47 years.

[16]