**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

EDIN HUSIDIC D/B/A AMA EXPRESS,
INC., et al.,

                                 CASE NO.: 3:24-cv-00963-WGY-SJH

      Plaintiffs,

v.

FR8 SOLUTIONS, INC., ALEN KAJDIC,
and AZRA BEGOVIC,

      Defendants.

_____/

**DEFENDANTS' MOTION FOR SANCTIONS**

      Defendants, FR8 Solutions, Inc. ("FR8"), Alen Kajdic ("Kajdic"), and Azra Begovic ("Begovic") (together, "Defendants"), hereby move for sanctions against Plaintiffs and their counsel, pursuant to Rule 11 of the Federal Rules of Civil Procedure, based on Plaintiffs' allegations that are presented for an improper purpose and have no evidentiary support. Specifically, to further their civil RICO claim, Plaintiffs' First Amended Complaint (the "Operative Complaint") contains allegations that Kajdic sent "threatening" text messages to discourage Plaintiffs from speaking out about FR8's alleged underpayment of truck drivers and to deter Plaintiffs from participating in official proceedings, including civil lawsuits. *See, e.g.,* Am. Compl. ¶¶ 72–78, 101–107; Exh. 44.

1

Defendants contend these allegations are factually baseless, frivolous, and materially mischaracterize the very text messages produced by Plaintiffs in discovery. These allegations violate Rule 11 of the Federal Rules of Civil Procedure and warrant sanctions.

## BACKGROUND FACTS

1.      The gravamen of Plaintiffs' Operative Complaint is that FR8 allegedly underpaid Plaintiffs in violation of their contracts.

2.      In their Operative Complaint, Plaintiffs assert a civil RICO claim predicated on allegations that Kajdic engaged in witness tampering, victim tampering, and threats involving murder. *See* Am. Compl. ¶¶ 72–78; 101–107; Exh. 44.

3.      Specifically, Plaintiffs allege that Kajdic sent text messages stating, among other things, that "someone's head goes off," that an individual "will not be alive," and that "someone will end up locked up or…dead." *Id.* ¶ 102. The text messages upon which Plaintiffs rely were produced by Plaintiffs in discovery and are attached to this Motion as **Exhibit A**.

4.      Plaintiffs further allege that these statements were made to prevent Plaintiffs from speaking out about alleged underpayments and to deter them from participating in official proceedings, including civil lawsuits, criminal complaints,

2

and hearings before the Department of Transportation ("DOT"). *Id.* ¶¶ 72, 77–78, 103–104.

5.      Plaintiffs characterize these alleged statements as distinct RICO predicate acts, including "threat[s] involving murder" chargeable under state law. *Id.* ¶ 105.

6.      Plaintiffs further allege that they did not discover any purported underpayments until "on or around June 2023." *Id.* ¶ 79.

7.      The text messages cited in the Operative Complaint (and produced by Plaintiffs), however, were sent between November 2021 and March 2022—more than a year before Plaintiffs claim they became aware of any alleged underpayment. *See* Exhibit A.[1] Accordingly, based on Plaintiffs' own timeline, the messages could not have been sent to silence complaints about alleged underpayments that Plaintiffs admit they had not yet discovered.

8.      Moreover, the full context of the November 2021 text messages produced by Plaintiffs demonstrates that the messages are unrelated to any alleged underpayment by FR8. *See* PLTFS00002706–2904, attached hereto as **Exhibit B**. When read in context, the exchange between Kajdic and Plaintiff Amir Bajrektarevic ("Bajrektarevic") reflects that Bajrektarevic was informing Kajdic

---

[1] The fact that counsel for Plaintiffs elected to remove or not include the dates of these text messages is of particular concern in that it suggests an intent to mislead the Court, which based on the Memorandum and Order (D.E. 135), was successful.

that a competitor had been making disparaging comments about Kajdic and his family within the industry. In the texts, Bajrektarevic and Kajdic were not discussing any party to this action, any driver compensation issues, any alleged underpayment, or any participation in official proceedings. To the contrary, Bajrektarevic discussed taking business away from the competitor and spoke positively about FR8.

9.     The same is true of the March 2022 messages between Kajdic and Bajrektarevic. Those communications arose from issues surrounding Plaintiff Kenan Hujdur's ("Hujdur") termination of him by FR8 following his receipt of multiple DOT citations, misconduct toward a DOT officer, and his subsequent efforts to damage FR8's business on multiple occasions, including but not limited to submitting fraudulent information to FR8's largest customer. *See* PLTFS00003142–3220, attached hereto as **Exhibit C**.

10.    Notwithstanding the clear unrelatedness of the text messages attached to—and cited within—Plaintiffs' Operative Complaint, Plaintiffs expressly allege that the messages were sent "to discourage Plaintiffs from speaking out about the fact that FR8 is underpaying its truck drivers" and "to deter Plaintiffs from participating in official proceedings." Am. Compl. ¶ 77.

11.     Plaintiffs have presented these demonstrably false allegations to support federal RICO claims, to seek treble damages, and to attack Kajdic's character.

12.     In denying Defendants' Motion to Dismiss, the Court expressly relied on Plaintiffs' allegations regarding the purportedly threatening text messages in allowing the RICO claim to proceed against Kajdic. The Court recognized that a "RICO claim is not the appropriate forum in which to litigate a breach of contract case" and that the underlying contract dispute did not support a RICO theory. D.E. 135, p. 12. However, the Court concluded that Kajdic's alleged threats of physical harm represented a "departure from a run-of-the-mill contract dispute" and "resemble the very mafia-like acts for which Congress created RICO." *See, e.g.*, D.E. 135, p. 12–13.

13.     Critically, the Court's decision to allow the RICO claim to proceed against Kajdic was expressly premised on Plaintiffs' knowingly false mischaracterization of the text messages as threats made to silence complaints about alleged underpayments and to deter participation in official proceedings. The Court relied on those allegations in concluding that Plaintiffs had sufficiently alleged racketeering predicate acts. As demonstrated above, however, the text messages—when read in context and considered in light of the timeline of events—do not support their characterization. The RICO claim against Kajdic was

therefore permitted to proceed based on allegations that are demonstrably false and misleading. As such, the allegations lack evidentiary support and were presented for an improper purpose, and sanctions are warranted.

## MEMORANDUM OF LAW

### A. Legal Standard

Rule 11(b) of the Federal Rules of Civil Procedure provides that in presenting a pleading to the Court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and "(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Moreover, the Court may award reasonable expenses, including attorneys' fees, that the prevailing party incurred for the motion. *See* Fed. R. Civ. P. 11(c)(2).

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) ("Absent exceptional circumstances, a

6

law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."). "[U]nder Rule 11, an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996). "A court confronted with a motion for Rule 11 sanctions must first determine whether the claims raised are objectively frivolous and, if they are, whether the signer of the pleadings should have been aware of their frivolous nature." *Benjamin v. BWIA Airlines*, No. 07-20017-CIV, 2009 WL 783353, at *4 (S.D. Fla. Mar. 24, 2009) (quoting *Worldwide Primates, Inc.*, 87 F.3d at 1254) (finding sanctions warranted under Rule 11 where exhibits attached to complaint were fabricated and claims raised by plaintiff were "objectively frivolous.").

The Court has the "inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal," which "includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process, including dismissal with prejudice and the assessment of fees and costs." *VIP Auto Glass, Inc. v. GEICO Gen. Ins. Co.*, No. 8:16-CV-2012-MSS-JSS, 2018 WL 3649638, at *3 (M.D. Fla. Jan. 3, 2018) (internal citations and quotations omitted). As this Court has noted,

> A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial

> system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense.

*Parcher v. Gee*, No. 8:09-CV-857-T-23TGW, 2016 WL 7446630, at *8 (M.D. Fla. Oct. 19, 2016), *report and recommendation adopted*, No. 8:09-CV-857-T-23TGW, 2016 WL 7440922 (M.D. Fla. Dec. 27, 2016) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)). "Courts have found dismissal an appropriate sanction when a party commits fraud by fabricating evidence." *Id.* at *9; *King v. Fleming*, 899 F.3d 1140, 1146 (10th Cir. 2018) (dismissing claims with prejudice and awarding attorneys' fees and costs against plaintiffs and attorney, where attorney "fail[ed] to make a reasonable inquiry into the manipulated document" and "also failed to respond reasonably when confronted with the fact that Exhibit 2 had been altered.").

### B. Argument

1.      Plaintiffs and Plaintiffs' counsel violated Rule 11 by asserting throughout the Operative Complaint that Kajdic sent text messages threatening physical harm in order to prevent Plaintiffs from speaking out about alleged underpayments and from participating in official proceedings. These allegations have no evidentiary support, are contradicted by Plaintiffs' own documentary productions, and are demonstrably false.

2.      The allegations concerning purported text messages from Kajdic are not supported by the actual messages that Plaintiffs produced in discovery.

8

Documents PLTFS00003142–3149, PLTFS00003545–3547, PLTFS00002877–2881, and PLTFS00003474–3475—attached hereto as Exhibit A—reflect that the messages do not reference any alleged underpayment, do not mention FR8 compensation practices, and do not concern participation in legal proceedings. Plaintiffs chose to materially alter the meaning of the text messages by removing them from their full context, extracting selected screenshots, omitting the dates of the messages in their filings, and characterizing the communications as criminal "threats."

3.      Rule 11 requires that counsel conduct a reasonable inquiry into both the factual and legal basis of a claim prior to presenting a pleading to the Court. Here, the documents upon which Plaintiffs rely in support of their civil RICO claim refute Plaintiffs' characterization of the communications. As such, Plaintiffs' allegations cannot be said to have "evidentiary support" within the meaning of Rule 11(b)(3). A reasonable pre-filing inquiry would have required Plaintiffs' counsel to read the full text message chains in context. Had they done so, counsel would have known that the messages concerned unrelated matters that have no bearing on the issues in this litigation. Plaintiffs allege that they only became aware of the alleged underpayment in June 2023. Am. Compl. ¶ 79. The messages cited in the Operative Complaint, however, span November 2021 through March 2022— over a year before Plaintiffs allege any knowledge of the purported

9

underpayment. Therefore, it would have been impossible for the messages to have been sent to discourage complaints about underpayment that Plaintiffs had not yet discovered. This temporal disconnect alone demonstrates that the allegations are objectively frivolous.

4.      The context surrounding the text messages further demonstrates their unrelatedness to any alleged underpayment scheme. *See* Exhibits B and C. The November 2021 text exchange reflects a discussion regarding a competitor's alleged disparaging remarks about Kajdic and his family and potential business consequences within the industry, in which Bajrektarevic was on Kajdic's side. The March 2022 communications arose from issues involving Hujdur following his termination, including his efforts to harm FR8's business interests, which included his submission of fraudulent information to one of FR8's largest customers.

5.      Nonetheless, Plaintiffs use these mischaracterized text messages to concoct federal RICO predicate acts, including alleged threats "involving murder" and witness tampering. Am. Compl. ¶¶ 101–105. These accusations are used to expand the scope and severity of the simple breach of contract case at issue and to pursue treble damages.

6.      The Court's prior Order denying dismissal of the RICO claim against Kajdic makes clear that the RICO claim survived solely because of Plaintiffs' characterization of these messages as threats designed to silence complaints and

deter participation in legal proceedings. As such, Plaintiffs' mischaracterization directly affected the Court's ruling and materially altered the course of this litigation. Plaintiffs' continued advocacy of the RICO claim compounds a Rule 11 violation. Moreover, Plaintiffs' conduct rises to the level of fraud on the Court.

7.    Accordingly, where, as here, the supporting documentation produced by Plaintiffs contradicts Plaintiff's own allegations, continuing to advance those allegations violates Rule 11(b)(3), which requires factual contentions to have evidentiary support. At a minimum, once Plaintiffs reviewed the complete message chains—and certainly once Defendants identified the temporal impossibility and contextual omissions—Plaintiffs were obligated to withdraw or correct their allegations. Their failure to do so warrants sanctions.

8.    The circumstances also support a finding of improper purpose under Rule 11(b)(1). Accusing Kajdic of threats of murder and witness tampering—without evidentiary support and in contradiction to Plaintiffs' own timeline—serves no legitimate litigation purpose. The inclusion of these allegations appears designed to attack Kajdic's character and bolster a civil RICO claim to seek treble damages. This constitutes an improper purpose under Rule 11(b)(1).

9.    The circumstances further support the exercise of the Court's inherent authority. Dismissal with prejudice is an appropriate sanction where fabricated or knowingly false evidence forms the foundation of a claim. Plaintiffs' RICO

predicate allegations are objectively frivolous, contradicted by the documentary record, temporally impossible, and advanced for an improper purpose. Rule 11 sanctions are therefore warranted to deter similar conduct, to compensate Defendants for the expense of responding to baseless allegations, and to protect the integrity of the judicial process.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court enter sanctions against Plaintiffs and their counsel in this action, dismiss Plaintiffs' RICO count with prejudice, and award Defendants their reasonable expenses, including attorneys' fees, incurred for this Motion.

Respectfully submitted,


*/s/ Steven E. Brust*

Steven E. Brust (FBN 0832091)

Richard D. Rivera (FBN 108251)

Ashley B. Carlisle (FBN 1049618)

**SMITH, GAMBRELL & RUSSELL, LLP**

50 N. Laura Street, Suite 2600

Jacksonville, Florida 32202

Tel: (904) 598-6100

Fax: (904) 598-6300

sebrust@sgrlaw.com

rrivera@sgrlaw.com

acarlisle@sgrlaw.com

*Attorneys for Defendants, FR8 Solutions, Inc. and Alen Kajdic*


**MILAM HOWARD NICANDRI & GILLAM, P.A.**

*/s/ W. Braxton Gillam, IV*

W. Braxton Gillam, IV

Florida Bar No. 122076

Pierce N. Giboney

Florida Bar No. 124704

14 East Bay Street

Jacksonville, Florida 32202

Telephone: (904) 357-3660

Facsimile: (904) 357-3661

Primary: bgillam@milamhoward.com

Secondary: sphipps@milamhoward.com

Primary: pgiboney@milamhoward.com

Secondary: pmaas@milamhoward.com

Secondary: hdurham@milamhoward.com

*Counsel for Defendant Azra Begovic*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 23, 2026, the foregoing document was filed with the Clerk of the Court using CM/ECF system, which will send a notice of electronic filing to all counsel of record in this case.

/s/ *Steven E. Brust*
Attorney