UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDIN HUSIDIC, D/B/A AMA
EXPRESS, INC., et al.,

      Plaintiffs,

v.

FR8 SOLUTIONS, INC., et al.,

      Defendants.

Case No.: 3:24-cv-00963-WWB-SJH

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION FOR SANCTIONS**

Defendants do not dispute the authenticity of text messages sent by Defendant Alen Kadjic, which include statements like: "**Find me someone. . . To break every bone. . . In [Plaintiff, Hujdur's] body**;" "**So leave us the fuck alone . . . Or I will fucking personally hit him where it hurts most . . . Too bad he doesn't have kids but he has a wife . . . Or does he have kids too?;**" "**But I promise on my families [sic] life, if he cost me active . . . He will not be alive.**" (*See, e.g.*, Mot. (Doc. 138) at 2 & Ex. A (Doc. 138-1), at 4-6) (emphasis added). Rather, Defendants' Motion for Sanctions prematurely asks this Court to construe against Plaintiffs disputed factual questions regarding the meaning, intent, and context of these text messages; rule on the merits of Plaintiffs' RICO claim; and impose sanctions. That is not

1

the purpose of Rule 11. Defendants' Motion is unwarranted and unsupported by the facts or law. It should be denied accordingly.

## I.    Factual Background

Plaintiffs are truck drivers who contracted with FR8 Solutions, Inc. ("FR8") to transport loads in exchange for 88% of the linehaul revenue for each load received by FR8 from third-party brokers. This action arises from a scheme by Defendants to defraud and underpay FR8's truck drivers. In particular, Defendant Alen Kajdic (FR8's Chief Executive Officer) and Azra Begovic (FR8's Chief Financial Officer and/or accountant) concealed and under-reported to Plaintiffs the revenue Fr8 received per load from its third-party broker customers so as to underpay Plaintiffs for each load they hauled. When Plaintiffs discovered the fraud, Kajdic made death threats to intimidate them and preserve the FR8 business.

On May 23, 2024, Plaintiffs commenced this action as a class action in the United States District Court for the Northern District of Illinois. (Doc. 1). In September 2024, by the parties' stipulation, this case was transferred to this Court. (Docs. 23, 26, 27, 28.) Also, in September 2024, Plaintiffs filed their First Amended Class Action Complaint (the "FAC"), where they realleged their RICO and breach of contract claims and added claims for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, and Truth in Leasing Act, 49 U.S.C. § 14704(a)(2). (Doc. 22.)

2

On October 11, 2024, Defendants filed a Motion to Dismiss Plaintiffs' FAC. (Doc. 52.) On January 6, 2026, the Court held a hearing on the Defendants' Motion to Dismiss (*See* Doc. 132.) On February 19, 2026, the Court entered a Memorandum and Order (Doc. 135) in which it denied the motion as to all counts against Defendants FR8 and Alen Kajdic, granted the motion as to Counts I and II against Defendant Azra Begovic, permitted the addition of Besir Catic as a named plaintiff, and dismissed the class allegations pursuant to the Plaintiffs' expressed intention to voluntarily withdraw them.

During conferrals regarding Plaintiffs' contemplated amendment of the FAC to add the new plaintiff and dismiss class allegations, Defendants raised a concern about Plaintiffs' allegations relating to text messages attributed to Defendant Kajdic in paragraphs 72–78 and 101–107 of the FAC (Doc. 24). Following the Court's resolution of the Motion to Dismiss, on around February 19, 2026, the parties conferred on whether Plaintiffs would file a Second Amended Complaint ("SAC") to conform with the Court's rulings. In connection with that conferral, Defendants indicated they intended to serve a Rule 11 letter with respect to the allegations relating to threats made by Kadjic. Plaintiffs told Defendants they would wait for service of the letter so they could consider that information when preparing the proposed SAC, so as to make any factual clarification needed in one pleading amendment. On February 26, 2026, Plaintiffs followed up with Defendants by email on the timing of the Rule

3

11 letter so that they could finalize their proposed SAC. On February 27, 2026, Defendants served their Rule 11 letter and motion on Plaintiffs.[1] After receiving the Rule 11 correspondence, Plaintiffs evaluated Defendants' concern and determined that targeted amendments would ensure those allegations accurately reflect the evidentiary record.

On March 20, 2026, Plaintiffs' counsel informed defense counsel that, in response to the Rule 11 correspondence, Plaintiffs would be seeking leave to file a Second Amended Complaint. On the same day, Plaintiff's counsel further advised defense counsel that Plaintiffs were in the process of finalizing the amendments and that Plaintiffs would provide Defendants with a copy of the proposed SAC ahead of the conferral. Also, on the same day, Plaintiffs and Defendants agreed to meet for a conferral on the proposed SAC on the following Wednesday, March 25, 2026.

Despite knowing that Plaintiffs were seeking leave to file an amended complaint in response to the Rule 11 correspondence and that the parties were scheduled to confer regarding the proposed amendment on March 25, 2026, Defendants filed this Motion for Sanctions two days before the conferral, on

---

[1] In a response to a Request for Admission, Defendant Kajdic denied the authenticity of the threatening text messages. Defendants now move for sanctions, apparently conceding the genuineness of the text exchange but contending that, although Defendant Kajdic sent the messages, they were taken out of context. Regardless, Defendants raise a factual dispute not proper for determination on a Rule 11 Motion at this stage.

March 23, 2026 (Doc. 138). Defendants also oppose Plaintiffs' motion for leave to amend the FAC (Doc. 140), which would moot the Defendants' Motion for Sanctions.

## II.    Legal Standard

Rule 11 sanctions are an "extraordinary remedy" that courts should exercise "with extreme caution." *Lynch v. Filice*, No. 24-CV-340, 2025 WL 417688, at *1 (M.D. Fla. Feb. 6, 2025). In assessing a Rule 11 motion for sanctions,  courts apply a "two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). The moving party has the burden of proving a violation of Rule 11, and all doubts regarding whether Rule 11 has been violated should be resolved in favor of the party against whom sanctions are sought. *Emergency Recovery, Inc. v. Hufnagle*, No. 19-CV-329, 2019 WL 9089594, at *1 (M.D. Fla. June 12, 2019). Rule 11 sanctions are reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation or brought for an improper purpose." *Fox v. Safeco Ins. Co. of Illinois*, No. 16-CV-2665, 2017 WL 8315911, at *2 (M.D. Fla. Sept. 20, 2017); *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001)."[A] factual dispute does not warrant Rule 11 sanctions." *Hillsborough Cnty. v. A & E Rd. Oiling Serv., Inc.*, 160 F.R.D. 655, 659 (M.D. Fla. 1995).

Similarly, an "erroneous interpretation of the law and facts does not warrant Rule 11 sanctions." *Id.*

### III.  Argument

#### A. Defendants' Rule 11 Motion for Sanctions is Premature.[2]

Defendants erroneously argue that Plaintiffs mischaracterized the context of the text messages and that there is no evidentiary basis that Defendant Kajdic made death threats to deter Plaintiff Hujdur from speaking out about the fraudulent underpayment scheme. Defendants improperly request that this Court dismiss the RICO claim against Defendants as a sanction.

Defendants' Motion – which disputes the merits and requests an early disposition of the RICO claim – is premature, and this Court should not consider it. "Rule 11 Sanctions are ordinarily not determined until the *end* of a case[.]" *Wheeler v. Lake Rousseau Resort*, No. 20-cv-172, 2021 WL 3501097, *1  (M.D. Fla. Feb. 8, 2021) (emphasis in original); *see also E-Z Dock, Inc. v. Snap Dock, LLC*, No. 21-cv-450, 2021 WL 4050951, at *1 (M.D. Fla. Aug. 31, 2021) ("Courts normally consider Rule 11 motions attacking pleadings at the

---

[2] Plaintiffs are renewing their Motion for Sanctions based on Defendants' spoilation of evidence. While Plaintiffs' Motion for Sanctions is ripe for review, Defendants' Rule 11 Motion for Sanctions is not. *See e.g., Nutramax Labs., Inc. v. Zesty Paws, LLC*, No. 6:22-cv-626-CEM-LHP, 2023 WL 4493960 (M.D. Fla. May 24, 2023) (denying Rule 11 Motion for Sanctions as premature but setting an evidentiary hearing for a Motion for Sanctions based on the spoilation of evidence).

end of litigation"). Courts defer Rule 11 motions to the close of litigation because it "allows the Court to gain a full sense of the case and avoid unnecessary delay of disposition of the case on the merits." *Fontainebleau Fla. Hotel, LLC v. Jacob*, No. 25-CV-20251, 2026 WL 555637, at *2 (S.D. Fla. Feb. 27, 2026) (quoting *Almeida v. Bennet Auto Supply, Inc.*, 335 F.R.D. 463 (S.D. Fla. July 6, 2020)) (cleaned up). Further, the Rule 11 two-step inquiry – whether claims are objectively frivolous and whether the signer should have known so – "'is not feasible at this stage of the litigation when it is not yet possible to determine on this record if the allegations are objectively frivolous in view of the law and facts." *Id.* (quoting *Almeida*, 335 F.R.D. at 466-67) (cleaned up).

In this case, Defendants have still not filed an answer, and discovery has not closed. Defendants still owe Plaintiffs a supplemental document production, including the production of the text messages from Defendant Kajdic's phone – the very text messages that are at issue in Defendants' Motion. Although Defendants dispute the merits of Plaintiffs' RICO claim, this is not the appropriate time or avenue to resolve the facts or legal sufficiency of Plaintiffs' RICO claim. If anything, Defendants' arguments are more suitable for a motion for judgment on the pleadings or a motion for summary judgment, not a Rule 11 Motion for Sanctions. *See e.g., Harris v. Gualtieri*, No. 25-cv-2172, 2025 WL 4033352, at * 7 (M.D. Fla. Nov. 17, 2025 (denying a Rule 11 Motion

for Sanctions and stating that the issues of fact would more appropriately be addressed by a motion for judgment on the pleadings or a motion for summary judgment), *report and recommendation adopted by*, 2025 WL 3492806 (M.D. Fla. Dec. 5, 2025).

Because Defendants' Motion inappropriately asks for this Court to prematurely resolve factual disputes and dispose of Plaintiffs' RICO Claim on its merits, Defendants' Motion must be denied. *See Wheeler*, 2021 WL 3501097, at * 1 (denying the motion for sanctions, where the motion essentially converted "a dispute over the factual allegations and legal arguments into a sanctions dispute," "because a Rule 11 motion is not an avenue to seek…a judgment on the merits of a party's position"); *see also Uniq Branch Office Mexico, S.A. de C.V. v. Steel Media Grp., LLC*, No. 22-23876-Civ, 2024 WL 1514632, at (S.D. Fla. Apr. 5, 2024) (denying Rule 11 motion for sanctions and stating that "the Court need not consider a motion for sanctions midway through litigation."); *Welsh v. Martinez*, No. 22-cv-216, 2023 WL 130752, at *3 (M.D. Fla. Jan. 9, 2023) (denying a motion for sanctions because it would be "simply premature for the Court to determine whether the Amended Complaint is so frivolous as to be subject to Rule 11 sanctions" before the claim "may be resolved on a summary judgment motion or may have to be resolved at trial").

**B. Plaintiffs' Allegations Are Not "Objectively Frivolous."**

Even if this Court were to entertain the merits of Defendants' premature Rule 11 Motion (it should not), Defendants' Motion should still be denied because the FAC allegations are not objectively frivolous. "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis." *Lawson v. Sec'y, Dep't of Corr.*, 563 F. App'x 678, 680 (11th Cir. 2014) (internal quotation marks and citation omitted). Rule 11 sanctions should only be imposed where a plaintiff offers "*no* evidence to support their allegations." *Id.* (quoting *Davis v. Carl*, 906 F.2d 533, 536 (11th Cir. 1990)) (emphasis in original).

In this case, Defendants' argument that Plaintiffs' allegations are objectively frivolous is a non-starter. In fact, Defendants' Motion *confirms* that there is an evidentiary and legal basis for Plaintiffs' RICO claim. This is because, in their Motion, Defendants apparently *concede* the fact that Defendant Kajdic sent the subject text messages, which contain death threats, about Plaintiff Hujdur, in addition to threats about the owner of a competing business. Defendants do not dispute the authenticity of the text messages identified in the FAC or the accuracy of the FAC's translation of certain of the text messages. The screenshots of text messages reproduced in the FAC reflect statements made by Defendant Kadjic, including:

- "Find me someone. . . To break every bone. . . In his body;"

- "So leave us the fuck alone . . . Or I will fucking personally hit him where it hurts most . . . Too bad he doesn't have kids but he has a wife . . . Or does he have kids too?"; and

- "But I promise on my families [sic] life, if he cost me active . . . He will not be alive…Then I have nothing to lose either."

(*See* FAC ¶ 73-75; Mot. at 2 & Ex. A (Doc. 138-1), at 4-6).) The FAC alleges that the content of the text messages were sent to discourage Plaintiffs from speaking out about the fact that FR8 is underpaying its truck drivers. (FAC ¶ 77-78.) Defendants also do not dispute that death threats constitute a predicate act under RICO. Instead, Defendants argue sanctions are warranted—and the FAC allegations are objectively frivolous—because they disagree with Plaintiffs' characterization of the text messages in three ways. None support sanctions.

*First*, Defendants take issue with the FAC's reference to certain threats made by Defendant Kadjic identified in paragraph 75 of the FAC because they concern a "competitor's alleged disparaging remarks about Kajdic and his family and potential business consequences within the industry," and not Plaintiff Hujdur or the underpayment scheme at issue in this case. (Mot. at 10.) That one of the several threatening texts alleged in the FAC may have been incorrectly attributed to a threat against Plaintiff Hujdur when in fact it was a threat against a competitor does not render the RICO claim frivolous or without evidentiary support. Threatening to kill or injure individuals that are

10

perceived as a threat to the RICO enterprise business is a predicate act[3] and precisely the kind of "mafia-like acts for which Congress created RICO," *See* Mem. & Order, Doc. 135, at 13, regardless of whether the target is the business's competitor or worker. And, in any event, Plaintiffs agreed to revise their allegations in the proposed SAC to clarify that this particular set of threats pertain to a competitor. (*See* Doc. 140-3, at 31.) Defendants oppose that amendment.

*Second*, Defendants take issue with the FAC's discussion of Defendant Kadjic's March 2022 threats of death and bodily harm, which they concede are about Plaintiff Hujdur, but that Defendants contend "arose from issues involving Hujdur following his termination, including his efforts to harm FR8's business interests," which Defendants claim involved Plaintiffs' "submission of fraudulent information to one of FR8's largest customers" – factual claims Plaintiffs dispute. (Mot. at 10.) However, those messages on their face expressly tie death threats to Plaintiff Hujdur speaking to the Department of Transportation ("DOT"), as well as customers:

> Dude he's not stopping . . . ***He tried DOT*** they laughed at him . . . Now customers . . . So leave us the fuck alone . . . Or I will fucking personally hit him where it hurts most . . . Too bad he doesn't have kids but he has a wife . . . Or does he have kids too?

---

[3] *See* 18 U.S.C. § 1961 (defining "racketeering activity" to include any threat involving murder, which is chargeable under State law as a felony); Fla. Stat. § 836.10 (written transmission of threat to kill or do bodily harm is felony of the second degree); *see also* 18 U.S.C. § 1512 (relating to tampering with a witness, victim or an informant).

(FAC ¶ 73 (emphasis added).)[4]

Presumably, Defendants intend to argue to a jury that Defendant Kadjic's statements about a Plaintiff, including "I will fucking personally hit him where it hurts most," " Too bad he doesn't have kids but he has a wife . . . Or does he have kids too?," and "I promise on my families [sic] life, if he cost me active . . . He will not be alive,"—do not constitute threats of death or bodily harm intended to intimidate Plaintiffs. (*See also*, *infra* n.4.) Defendants' litigation position notwithstanding, the messages contain what a reasonable, objective person would interpret as threats of death and physical harm made in connection with FR8's business. *See Akers v. Newby*, No. 21-CV-140, 2023 WL 2329202, at *2 (M.D. Fla. Jan. 24, 2023) (court must first assess whether the party's claims are objectively frivolous in view of the facts or law).

*Third*, Defendants argue that since the FAC alleges the Plaintiffs did not become aware of the underpayments until around June 2023, Defendant

---

[4] Defendants appear to suggest that the reference to DOT relates to "his receipt of multiple DOT citations" and "misconduct toward a DOT officer," and cited to Exhibit C to their Motion. Exhibit C contains further threats beyond those alleged in the FAC, including **"He better watch his back . . . Cuz he's fucking with something I will protect at all cost . . . Dude he has no idea wtf he's doing . . . How much money he is fucking with, how much annually we gross with them . . . People disappear for allot [sic] less.**" (*See* Doc. 138-3, at 11-13.) (Emphasis added). What Defendant may have meant when he sent these messages is an issue of fact to be resolved at trial. The evidence does suggest, however, that Defendant Kadjic has a practice of making death threats about those he perceives may adversely affect the FR8 business.

Kadjic could not have sent the threatening messages between November 2021 and March 2022 with intent to intimidate or deter Plaintiffs from reporting the scheme. (Mot. at 4.) Thus, Defendants conclude that Plaintiffs knowingly presented "demonstrably false allegations" to support their federal RICO claims and to "attack Kadjic's character." (Mot. at 11-12.)

At the time Defendant Kadjic sent these messages in late 2021 and early 2022, the FAC alleges he was engaged in the fraudulent scheme to underpay Plaintiffs. (*See, e.g*, FAC ¶ 47, 49, 51, 54-56, 60-66.) A reasonable inference drawn from the facts is that Defendant Kadjic, knowing he was using FR8 to defraud Plaintiffs (even if all Plaintiffs had not yet discovered the scheme[5]), made these statements to Plaintiff Bajrektarevic to intimidate and send a message prospectively that anyone who reported wrongdoing by FR8 would be at risk. This inference will be supported by the evidence:[6] Plaintiff Hujdur first learned of the fraudulent underpayment scheme in early 2022 (*See* Declaration of Kenan Hujdur [hereinafter, "Hujdur Decl."] ¶ 3, attached as **Exhibit 1**), and Defendant Kadjic learned in March 2022 that Plaintiff Hujdurwas claiming

---

[5] The FAC alleges that Plaintiffs became aware of the underpayments on or around June 2023. The proposed SAC would clarify that many Plaintiffs did not become aware of the underpayments until on or around June 2023. (*See* Doc. 140-3, at 26.)

[6] Plaintiffs proposed revisions to the FAC to plead this evidence to resolve the issues raised in Defendants' Rule 11 letter. (*See* Doc. 140-3, at 27-28). Defendants oppose the amendment.

that FR8 was underpaying its truck drivers. (*See* Declaration of Amir Bajrektarevic [hereinafter, "Bajrektarevic Decl."] ¶ 3, attached as **Exhibit 2**.)

In sum, Plaintiffs' FAC allegations are not "objectively frivolous" or lacking evidentiary support. *See* Fed. R. Civ. P. 11(b)(3). To the contrary, Defendants concede that Defendant Kajdic sent death threats about Plaintiff, Hujdur. Defendant Kajdic's threats violate the law and constitute a predicate act under RICO. Therefore, because there is a legal and evidentiary basis for Plaintiffs' RICO claim, it is not frivolous. *See e.g., Lawson*, 563 F. App'x at 681 ("The fact that [a plaintiff] has provided *some* evidence [of his factual contentions] is sufficient to establish that Rule 11 sanctions are inappropriate . . . ."); *see also U.S. v. Simpson*, No. 97-cv-242, 1998 WL 751904, at *5 (N.D. Fla. June 25, 1998) ("Where there is some legal and factual basis for the argument, sanctions are inappropriate."). Defendants' Motion should be denied.

### C. Plaintiffs Did Not Fabricate Evidence.

As a Rule 11 sanction, Defendants seek dismissal of Plaintiffs' RICO count with prejudice, because "fabricated or knowingly false evidence forms the foundation" of the RICO claim. (Mot. at 11.) Defendants represent, citing no factual basis or evidence whatsoever (there is none), that Plaintiffs' counsel "elected to remove or not include the dates" of the text messages reproduced in

14

the FAC, which is "of particular concern" as it was done with the "intent to mislead the Court" and prevail on their RICO claim. (Mot. at 3.)

Contrary to Defendants' inflammatory and patently false accusations, Plaintiffs' counsel has not fabricated evidence to support Plaintiffs' RICO claim or presented false evidence with intent to defraud the Court. These are grave accusations against counsel's integrity and ethics, which Defendants make with no evidence to support them. *See Ofer v. Millan*, No. 24-CV-20888, 2024 WL 4120794, at \*3 (S.D. Fla. July 29, 2024) ("accusations of unethical conduct are among the most serious of allegations that a court must consider").

In that regard, Defendants' Motion itself violates Rule 11 and fees should be assessed against them. *See Selwyn v. Bruck L. Offs., S.C.*, No. 19-CV-135, 2020 WL 13598626, at \*9 (M.D. Fla. July 1, 2020) ("The filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. . . . Ordinarily, this does not require a cross-motion for sanctions, since a court is authorized to award fees to a party that successfully opposes a Rule 11 sanctions motion.") (quoting Fed R. Civ. P. 11(b), (c) advisory committees' note to 1993 amendment & *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1260 (11th Cir. 2014) (cleaned up). In *Selwyn*, the defendant filed a Rule 11 motion, which, among other things, accused the plaintiff's attorney of conspiring with his client to file a lawsuit based on fraudulent evidence. The court noted that the Defendant provided "absolutely no evidence" that the

15

attorney committed the wrongdoing charged and warned: "Defendant would be well-advised in the future to think twice before accusing a fellow attorney of such grave misconduct without supporting evidence." 2020 WL 13598626, at *9. So is the case here.

The text messages that appear in the FAC are screenshots of text messages provided by Plaintiff in their entirety, as received from Plaintiff; counsel did not remove, omit, or conceal any date information from the screenshots before they were reproduced in the FAC. After the parties held their Rule 26 conference and began to engage in discovery, Plaintiffs undertook the cost to forensically image Plaintiff Bajrektarevic's text messages and produced a Cellebrite report of same to Defendants.[7] The Cellebrite report produced to Defendants (portions of which appear as exhibits to the Motion) was created on January 24, 2025; the date is stamped on the first page of the report. At the same time, Plaintiffs also produced the text messages in native format. These versions of the text messages, which preserved metadata and date and time stamps, was not in counsel's possession at the time the FAC was filed on September 3, 2024 (Doc. 24).

---

[7] Defendants have yet to produce their text messages in this litigation despite repeated promises to do so. However, Defendant Kadjic's own retained text messages also show the date and time he sent them.

Defendants fail to meet the "steep burden" required to impose any sanction under Rule 11, and certainly not the extreme sanction of dismissal based on "fabricated evidence." *Emergency Recovery, Inc.*, 2019 WL 9089594, at *1. This case bears no resemblance to the cases Defendants rely upon in their Motion to support dismissal. Indeed, a comparison between this case and those cited by Defendants serve only to further highlight the egregiousness of Defendants' accusations against counsel here, as they are unbuttressed by any evidence. In *Benjamin v. BWIA Airlines*, the court entered sanctions upon the presentation of three witness declarations that proved a contract was a forgery. No. 07-20017-CIV, 2009 WL 783353, at *5-7 (S.D. Fla. Mar. 24, 2009). In *VIP Auto Glass, Inc. v. GEICO Gen. Ins. Co.*, the court dismissed a complaint as a sanction upon defendant's presentation of sworn testimony and an affidavit proving a signature on an assignment of benefits was forged. No. 16-CV-2012, 2018 WL 3649638, at *3-4 (M.D. Fla. Jan. 3, 2018). In *Parcher v. Gee*, the court dismissed a case as a sanction based on testimony of various witnesses and anomalies on the face of several documents submitted by the plaintiff, which showed the documents were fraudulent. No. 09-CV-857, 2016 WL 7446630, at *6-9 (M.D. Fla. Oct. 19, 2016), *report and recommendation adopted,* 2016 WL 7440922 (M.D. Fla. Dec. 27, 2016). Finally, in *King v. Fleming*, the court dismissed claims as a sanction where there was "overwhelming evidence" of counsel's continued reliance on a manipulated email, which had "strong

17

indicators of fraud." 899 F.3d 1140, 1148-49 (10th Cir. 2018). In contrast to each of these cases, Defendants ask this Court to dismiss Plaintiffs' RICO claim on their bare accusation alone—devoid of any evidence of fabrication or intent to defraud the Court.

At bottom, Defendants' Rule 11 Motion seeks a second bite at the apple. Defendants are dissatisfied with this Court's ruling denying their Motion to Dismiss and now wrongfully attempt to secure an early dismissal of Plaintiffs' claims through a Rule 11 Motion. Defendants' attempted end run around filing a motion for summary judgment or trying the case on its merits is unavailing and inappropriate, especially considering that Plaintiff's RICO claim is amply supported by facts alleged in the FAC.

The RICO claim is predicated on (1) hundreds of instances of wire and mail fraud, wherein Defendants misrepresented load price amounts to Plaintiffs on earning statements and communications for the purpose of defrauding them, and (2) threats of death and bodily harm regarding Plaintiff Hujdur. (*See, e.g.,* FAC ¶ 88-107.) *See also Akers*, 2023 WL 2329202, at *2 (denying sanctions where plaintiff adequately pled two racketeering acts of sending bills that misstated the amount of pass-on taxes in furtherance of overbilling scheme). As set forth above, Defendants do not dispute that Defendant Kadjic sent the text messages and that the March 2022 messages were about Plaintiff Hujdur. The evidence will show that at the time Defendant

18

Kadjic's threatening messages about Plaintiff Hujdur were sent, Defendant Kadjic was told that Plaintiff Hujdur was claiming that FR8 was underpaying its truck drivers. (*See* Bajrektarevic Decl. ¶ 3.) Defendant Kajdic's death threats continue to instill fear in Plaintiff Hujdur. *See, e.g.,* Hujdur Decl. ¶ 8. Although Defendants may take a different view of Defendant Kadjic's text messages, a reasonable, objective interpretation is that they consist of threats of death or bodily harm, which were intended to intimidate Hujdur and other FR8 truck drivers and deter them from reporting wrongdoing.

Ultimately, as the Court properly concluded, despite the lack of date stamps on the text messages, that "[t]he time, persons, and specific nature of the threats, made for the purpose of protecting the business relationships and profits of corporate entity Fr8 Solutions, [were] otherwise adequately pled." *Id.* at 14. And, indeed, Defendants' explanation of the messages support the Court's finding that the threats (whether about a competitor or Plaintiff Hujdur) were made to protect the FR8 business relationships and profits of the FR8 corporate entity. (*See* Mot. at 3-4.)

Defendants' accusations are meritless, and dismissal of the RICO claim is unwarranted.

19

### D. Plaintiffs' Proposed Amendment Moots the Defendants' Motion

Although Plaintiffs are not required to plead their evidence,[8] within the safe harbor period, and to obviate the need for motion practice, Plaintiffs informed Defendants that they would seek to amend the FAC to clarify and revise factual allegations related to the text messages. Thus, even if Defendants' Motion for Sanctions had merit (it does not), it is mooted by the SAC revisions, which Defendants now oppose.[9] Defendants' Motion for Sanctions should also be denied on this basis.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order denying Defendants' Motion for Sanctions.

---

[8] See *Gentry v. Carnival Corp.*, 11-21580, 2011 WL 4737062, at *4 (S.D. Fla. Oct. 5, 2011) (a plaintiff is "not required to plead evidence, nor even all the facts upon which [his] claim is based").

[9] The proposed amendment also contains revisions to reflect the transfer of venue, the agreed withdrawal of one count, and the Court's rulings permitting the addition of one plaintiff and the withdrawal of class allegations. (*See* Doc. 140.) Those revisions are unopposed. (*Id.* at 6-7.)

20

Dated: April 6, 2026

Respectfully submitted,

*/s/ Stephanie A. Casey*
Stephanie A. Casey
Florida Bar No. 97483
scasey@colson.com
Sabrina S. Saieh
Florida Bar No. 125290
sabrina@colson.com
Thomas A. Kroeger
Florida Bar No. 19303
tom@colson.com
**COLSON HICKS EIDSON, P.A.**
806 S. Douglas Road, Suite 1200
Coral Gables, Florida 33134
Phone: (305) 476-7400

Rain Montero
*Pro hac vice*
IL Attorney No. 6339412
**JAFFE & BERLIN, L.LC.**
111 W. Washington, Suite 900
Chicago, IL 60602
(312) 372-1550
rmontero@jaffeberlin.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 6, 2026, I filed a true and correct copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will serve the foregoing on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

<u>*/s/ Stephanie A. Casey*</u>
Stephanie A. Casey